559 So.2d 1204 (1990)
Mary Edith Mitchell PFAFFKO, Appellant,
v.
Arthur Gustave William PFAFFKO, Appellee.
Nos. 89-00815, 89-01403.
District Court of Appeal of Florida, Second District.
March 9, 1990.
Rehearing Denied May 1, 1990.
*1205 David A. Maney and A. Ann Arledge of Maney, Damsker & Arledge, P.A., Tampa, for appellant.
Taryn X. Temmer and Jan Soeten, Jr. of Brandon Law Center of Jan Soeten, Jr., P.A., Brandon, for appellee.
LEHAN, Acting Chief Judge.
We affirm the final judgment of dissolution of marriage from which the wife appeals. Whether or not we would have made the determinations made by the trial court, we conclude that the trial court did not abuse its discretion. Those determinations were not unreasonable because reasonable men could differ as to whether or not they should have been made. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980).
In her first two points on appeal the wife contests the awards to the husband of lump-sum alimony for support, payable in installments, and child support. She ably argues, and accurately so, that the total amount of those awards exceeds the amount which the evidence showed was necessary to enable the husband and the two minor children of the marriage, whose custody was awarded to the husband, to maintain the standard of living under which the husband and wife had last lived together, which was in their home in Gainesville with those children. We recognize that there is case law to the effect that the prior standard of living to be used as a guide in fixing the amount of support payments is that last shared by the spouses. See Sokol v. Sokol, 441 So.2d 682, 684 (Fla. 2d DCA 1983); Hall v. Hall, 363 So.2d 137, 139 (Fla. 2d DCA 1978), cert. denied, 370 So.2d 459 (Fla. 1979). However, we conclude that that case law is materially distinguishable and that there was no abuse of discretion in the making of those awards in this case, as we will explain.
Under the particular circumstances of this case the trial court was not unreasonable in effectively considering the most significant prior standard of living to have been not that in Gainesville but that in Valrico, near Tampa, to which the husband had moved from Gainesville when he was transferred to that area by his employer. The eleven year old daughter of the marriage soon thereafter chose to live in Valrico with the husband rather than remain in Gainesville. The wife and the other minor child of the marriage, their five year old son, remained in Gainesville, planning to move to Valrico at the end of the school year. The husband and daughter lived in Valrico in a more expensive home which had been purchased by the husband and wife while they lived together in Gainesville. Title to the Valrico home was placed in their names as tenants by the entirety.
The down payment for the Valrico home came from income from certain of the *1206 wife's very substantial nonmarital assets. While the trial court declined to decide specifically whether or not that income was nonmarital, saying that "there is a question" in that regard, the court treated that income as nonmarital by the award to the wife of a special equity in the Valrico home which is described below.
After the husband and the eleven year old daughter had moved to Valrico, the wife engaged in an extramarital affair with another man in the parties' Gainesville home where she lived with the son and her sixteen year old daughter from her prior marriage. Because of that daughter's dislike of that affair, she then moved to Valrico to live with the husband and the parties' daughter. The wife decided not to move to Valrico.
The final judgment awarded the use and occupancy of the Valrico home to the husband until the youngest child of the marriage reaches age 18, dies, marries or becomes economically self-supporting or until the husband remarries or vacates the home. There was undisputed evidence that the total amount of the foregoing awards was reasonably commensurate with what was necessary for the husband and both minor children of the marriage to maintain in the Valrico home the standard of living under which the husband and the daughter of the marriage had lived in that home.
We do not conclude that the trial court abused its discretion in ruling in effect that the fact that the wife did not choose to share the standard of living under which the husband and the daughter of the marriage lived in Valrico, where the husband worked and the daughter became established in school, did not relieve the wife of responsibility to contribute to the maintenance of that standard for the husband and both children of the marriage when the wife had significantly participated in establishing it for the entire family. This unusual factual situation is similar in a relevant sense to the less unusual reverse factual situation in which a former spouse, faced with an obligation to support his or her family in a home he or she had participated in acquiring for them, had lived in the home and had later chosen to move out. In either situation the former spouse should not be entitled to avoid an otherwise proper obligation to support the family under the standard of living represented by their living in that home simply because he or she had chosen not to live there, i.e., had chosen not to live under that standard. The similarity becomes closer if in the foregoing reverse factual situation an extramarital affair was involved in the choice of the spouse not to live in the home.
We note that the trial court awarded the wife a special equity in the Valrico home based upon the down payment which, together with her interest as a tenant by the entirety, gave her a 70.38 percent interest in that home. She was also awarded full ownership of the Gainesville home.
In contesting the support awards the wife also argues that in making those awards consideration was improperly given by the trial court to certain nonmarital assets of the wife, including the assets from which income was used for the down payment on the Valrico home. She points out that the husband and wife had lived together in Gainesville primarily on the husband's income without reliance upon those nonmarital assets. We find no abuse of discretion in this regard. As the trial court found, the wife had been able to accumulate nonmarital assets during the marriage while the parties had lived together in Gainesville. See Burchard v. Burchard, 455 So.2d 625, 626 (Fla. 2d DCA 1984). Also, as indicated above, the evidence was that those awards are needed by the husband to maintain the Valrico home, including its mortgage payments, and support the children of the marriage. See Pollack v. Pollack, 517 So.2d 707, 708 (Fla. 4th DCA 1987), review denied, 528 So.2d 1183 (Fla. 1988); Reyher v. Reyher, 495 So.2d 797, 800 (Fla. 2d DCA 1986).[1]
As her third point on appeal, the wife contests the trial court's equal division *1207 between the parties of a joint bank account. We find no abuse of discretion in this regard. Money in that account had come from both parties and had been available to both. See Diffenderfer v. Diffenderfer, 456 So.2d 1214, 1215 (Fla. 1st DCA 1984), rev'd on other grounds, 491 So.2d 265 (Fla. 1986); Beaty v. Beaty, 177 So.2d 54, 57 (Fla. 2d DCA 1965).
As her fourth point on appeal, the wife contests the portion of the final judgment and a subsequent order requiring that the wife pay the husband's attorney's fees and costs. We find no abuse of discretion in this regard. See Dash v. Dash, 363 So.2d 48 (Fla. 3d DCA 1978); Lochridge v. Lochridge, 526 So.2d 1010, 1012 (Fla. 2d DCA 1988); Casto v. Casto, 458 So.2d 290, 292-93 (Fla. 4th DCA 1982), aff'd, 508 So.2d 330 (Fla. 1987).
As her fifth point on appeal, the wife contests the award to the husband of primary residential custody of the two minor children of the marriage. We find no abuse of discretion in this regard. See Miller v. Miller, 342 So.2d 85, 86 (Fla. 1st DCA 1976), cert. denied, 354 So.2d 983 (Fla. 1977).
Affirmed.
FRANK and THREADGILL, JJ., concur.
NOTES
[1] While the second point on appeal also appears to assert error in the consideration given to the wife's nonmarital assets in determining equitable distribution, no particular equitable distribution is identified.