GRIFFIN, Judge,
concurring in part, dissenting in part.
This husband and wife had been married twenty-one years when they were divorced in January, 1989. They had one child, who by the time of the divorce had reached majority. The wife had been employed only sporadically outside the home during the marriage. She suffered from a variety of significant health problems, including Epstein-Barr syndrome, scoliosis and a perforated eardrum. As of the final dissolution hearing, the wife was earning a net of $196 per month at a part-time job. She testified, however, that she had just completed travel agent school and estimated she had a potential net income of approximately $650 per month. Her financial affidavit showed monthly expenses of $2,067.25. The husband’s estimated annual gross income as a car salesman at the time of the divorce was $40,252.68, yielding a net income of $2,378.36 per month. The husband’s expenses totalled $2,110 which included $550 in temporary support paid to wife and $310 in marital debt payments. In the final judgment, wife was given one year of rehabilitative alimony in the amount of $200 per month and $400 per month in permanent alimony. The assets and the debts of the marriage were equally divided. The trial court stated that in reaching an equitable distribution of marital assets he was taking the award of permanent alimony into account. The trial *1204 court ordered both parties to bear their own attorneys’ fees.
After the rehabilitative alimony expired, husband sought modification of the $400 permanent award, alleging that wife’s income was higher than contemplated by the final judgment while his income was lower and his expenses higher. The financial affidavit he filed in support of his petition for modification reflected a net monthly income of $2,217.24, a reduction of $161.12 per month,[1] “due to the recession.” Depending on which testimony or evidence the trial court believed, husband’s probable income was anywhere between $30,000 and $40,000. According to his financial affidavit, the husband’s expenses had dropped some $300 per month, to $1,822. His true financial status was complicated, however, by the fact that since the divorce he began cohabiting with his girlfriend and her fifteen year old daughter. His rent cost had risen $230 per month, along with several other items, including food, property taxes and insurance, while other items such as utilities, pest control and laundry had fallen. He also recorded an additional $85 per month in voluntary payments made on behalf of his mother and disabled brother. Of the approximately $18,000 in equitable distribution he received, he still has $16,500 worth of assets — $6,500 savings and $10,-000 invested in the purchase of real property jointly with his girlfriend.
The financial affidavit of the wife filed in connection with the modification proceeding reflected gross annual income from the full-time employment she had recently obtained as a driver’s license examiner for the State of Florida to be $13,347.12. Adding the $400 per month in alimony she received, her income totaled $18,147.12. On her financial affidavit she reported a net monthly deficit of $108.30. In addition, during the course of the hearing, she testified to a variety of medical expenses she has incurred as the result of her various ailments and an estimated cost of $5,600 to $6,000 for the operation to repair her ear. Since the divorce she has developed a hormone deficiency disorder that is treated with medication. She also testified about additional needed medical treatments for her back, teeth and eyes that she has been unable to afford. Wife testified that she has been using her equitable distribution to pay the monthly deficit and her savings left over from the equitable distribution had shrunk to $5,200.
The hearing on modification was held twenty months after the original final judgment of dissolution was entered. At that time the trial court denied both the husband’s petition to modify alimony and the wife’s counterpetition for an increase. The order also determined that the husband would have to pay wife’s attorney’s fees. The court ruled that if the parties were unable to reach an agreement as to the amount of the fees, he would set a hearing. The parties then entered into a “stipulation” pursuant to which they agreed that the wife’s attorney was owed $6,350 in attorney’s fees and $658.30 in costs. There was an express reservation in the stipulation, however, of the issue of “reasonableness” of the fees. Wife’s attorney filed a number of affidavits in support of the fee application including testimony attesting to the reasonableness of the fees. Without conducting a further hearing or taking of testimony, the trial court entered an order awarding the wife $7,008.30 in fees and costs. In my view, the failure to conduct a hearing, to take testimony on the contested issues and to make appropriate findings in accordance with Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985) was error. Castranova v. Auth, 590 So.2d 28 (Fla. 5th DCA1991); Prom v. Prom, 589 So.2d 1363 (Fla. 1st DCA1991); Gamba v. Gamba, 587 So.2d 1162 (Fla. 4th DCA1991). Although the stipulation obviated the need to prove the amount of fees incurred, husband expressly reserved the issue of reasonableness. For that reason, the order awarding attorney’s fees does require reversal, remand for an appropriate hearing and entry of an appropriate order on the remaining issues.
*1205 I cannot agree, however, with the majority’s “instruction” to the trial judge concerning his inability to “correct errors of law committed by his predecessor” or to “review and reverse on the merits and on the same facts the final orders of his predecessor.” It would not be surprising if the trial judge could not divine the purpose of this statement since it was neither argued below nor on appeal. It refers to the trial court’s decision to award fees to the wife even though there was no award of fees when the dissolution judgment was entered.
This matter was heard on cross petitions to modify alimony heard almost two years after the original divorce decree, and although the parties differ fiercely about the facts of their changed circumstances and their legal effect, the one thing both parties agree on is that the parties’ financial circumstances are very different than they were at the time of the divorce. The lower court’s decision to deny either petition for modification does not expressly or implicitly conclude otherwise.
The majority’s characterization of the court’s denial of the petitions for modification and decision to award fees to the wife as an attempt “to correct an error of law committed by the judge who heard the divorce” to “reverse on the merits and on the same facts the final orders of the predecessor” suggests that a denial of a petition for modification cannot support an award of fees if fees were not awarded originally. Following that logic, it must also be true that an unappealed award of fees controls determination of the fee application in a subsequent modification proceeding if modification is denied. In my view, such an approach is both unwise and inconsistent with Florida law.' Florida Statute 61.16 plainly provides:
The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount of attorney’s fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings. (emphasis added).
It seems obvious that the trial court, upon ruling on modification, is obliged to determine fees based on the circumstances of the parties at that time.[2]
For the little value it may have to the trial judge in his effort to interpret the majority opinion, my own interpretation is that the decision (erroneously) requires him to rule in the modification proceeding as the original judge who entered the divorce decree ruled (i.e., deny fees) but only if he determines that the relevant facts affecting the fee decision are presently the same as they were in January, 1989.

. Husband testified at the hearing in September that the income estimate in his affidavit was overstated and that, in fact, his net average income was likely to be $2,026.17.

. When there is a substantial disparity in the parties’ annual income and no substantial, ready income-producing asset distributed to the wife available to pay the attorney’s fee, the party with superior income-producing capacity should pay the fee. Blackwell v. Blackwell, 589 So.2d 969 (Fla. 2d DCA 1991); Nisbeth v. Nisbeth, 568 So.2d 461 (Fla. 3d DCA 1990); Eddy v. Napier, 558 So.2d 199 (Fla. 2d DCA 1990); Blackburn v. Blackburn, 513 So.2d 1360 (Fla. 2d DCA 1987); Henning v. Henning, 507 So.2d 164 (Fla. 3d DCA 1987). Where the parties' financial positions are not the same, and one party has a superior ability to secure and pay for counsel, the court should award attorney’s fees to the disadvantaged party. LaHuis v. LaHuis, 590 So.2d 557 (Fla. 3d DCA 1991). The trial court is invested with discretion on this issue, Pfaffko v. Pfaffko, 559 So.2d 1204 (Fla. 2d DCA 1990).