604 So.2d 536 (1992)
Cherie Ann PETRULLO, Appellant,
v.
Michael Louis PETRULLO, Appellee.
No. 91-3197.
District Court of Appeal of Florida, Fourth District.
August 12, 1992.
*537 Young T. Tindall, Fort Lauderdale, and Amy D. Shield of Amy D. Shield, P.A., Boca Raton, for appellant.
Maurice Jay Kutner and Carolyn W. West of Maurice Jay Kutner, P.A., Miami, for appellee.
LETTS, Judge.
In a post dissolution proceeding involving custody, the trial judge held a hearing to consider a pending motion to disqualify him filed by the mother. At the conclusion of that hearing, he reserved ruling and requested memoranda of law on "the issues of this recusal." On the same day, he issued a sweeping written order removing the child from the custody of the mother and granting it to the father. We reverse.
Five days prior to the date of the above described hearing, the trial judge had denied the motion to disqualify him as being legally insufficient, but he did so "without prejudice to file additional proof for a basis of disqualification." No additional proof was filed after the date of that denial. The record does not explain why, after having denied the motion to disqualify him, the trial judge later held a hearing on that very same question, at which he reserved ruling. Likewise, there was no explanation set forth in yet another order three weeks after that in which the trial judge finally recused himself without equivocation.
There were two issues before the trial judge in this case: the father's motion to change primary residential custody from the mother to him and the mother's request that the child be allowed to move with her to Colorado. The motivation for these proceedings was the mother's move to Colorado with the child without court permission. The record is clear that the judge had ordered the child returned to Florida long before any attempt to recuse was made. However, the record does not reflect that the judge had announced or made up his mind to actually transfer residential custody of the child prior to the suggestion for disqualification.
Despite the fact that the trial judge had earlier denied the suggestion for disqualification, he apparently believed the disqualification issue was still before him inasmuch as he subsequently held a hearing on that subject matter. It, therefore, behooves us to consider whether the trial judge could enter a written order transferring custody while he believed the disqualification suggestion was still before him. We conclude he could not under Fischer v. Knuck, 497 So.2d 240 (Fla. 1986), which clearly indicates that the trial judge could only do so if his written order was a mere ministerial act after public declaration of his intention. Such was not the case sub judice.
We have considered affirming this cause on the basis that the error was harmless because the grounds set forth in *538 the two affidavits supporting disqualification were clearly legally insufficient. In fact, this court had already agreed with that and had denied a petition for a writ of prohibition filed against the same trial judge on the identical subject matter and on the same grounds on August 14th, 1991, 4th DCA case number 91-2294. Of course, no record of this earlier ruling is found in the Southern Reporter and we agree that the denial of a writ without opinion cannot be the law of the case. See Bing v. A.G. Edwards & Sons, Inc., 498 So.2d 1279 (Fla. 4th DCA 1987). Nevertheless, we can certainly make reference to our own records. The legal insufficiency to which we refer is apparent from the contents of the two affidavits[1] filed in the trial court. The first one does nothing more than complain about delay in making rulings, which the mother avers, was being done on purpose "for some unknown reason." The second affidavit complains that the father had gone to dinner with a "relative of [the trial judge]." Neither of these bare assertions are legally sufficient. At best, they are no more than "subjective fears ... not reasonably sufficient to justify a well-founded fear of prejudice." Knuck at 242. See also Nasetta v. Kaplan, 557 So.2d 919 (Fla. 4th DCA 1990); Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981). Moreover, the record contains a retraction by the mother's counsel of the contents of the second affidavit. (It was some other judge's relative the father had dinner with.) We might well have applied this rationale to affirm but for the fact that the judge held a hearing on the recusal, reserved ruling and three weeks later did, in fact, recuse himself. That act of recusal demands reversal of the custody change order.
We address two other items alleged by the mother to be reversible error and contained in the transfer of custody order. The mother argued, in part, that the order changing custody should be reversed because it contained two factual errors. The first is the assertion that the trial judge gave the child's age as ten, when in fact, he was twelve. Under the facts of this case, we believe this allegation was frivolous. The second alleged error is not frivolous and we address it immediately hereafter.
The mother alleges that there was no restriction in the final judgment which prevented her from taking the child to Colorado without permission of the father, or the court, and that the trial judge erred in finding such a restriction. Technically, the wife is correct. There is an absence of any such specific language. However, it is inherent in the final judgment that the child could not be removed from Florida to take up residence in Colorado because of the detailed visitation provisions. For example, we quote from the final judgment as follows:
f. Each party shall exercise the utmost good faith and shall consent to all reasonable requests by the other party for contact with the child. The husband shall have the right to at least the following minimum contact with the child:
(1) Beginning July 18, 1986, every other weekend from 6:00 p.m. on Friday to 6:00 p.m. on Sunday evening;
(2) Palm Sunday, every year;
(3) Easter Sunday, beginning 1988 and every other year thereafter;
(4) Father's Day and husband's birthday every year;
(5) July 4 beginning 1987 and every other year thereafter;
(6) Thanksgiving Day, every other year, beginning 1987;
(7) Halloween, every other year, beginning 1986;
(8) The week prior to Christmas, including Christmas Eve and Christmas Day, every other year, beginning 1987 and the week after Christmas from 6:00 p.m. on December 26 beginning 1986 and every other year thereafter;
(9) One-half of the child's summer vacation, beginning 1986. The husband shall have the choice of first or second-half of the summer vacation, provided he notifies the wife at least thirty days *539 before the commencement of the summer vacation as to his choice.
g. If at anytime the wife's employment requires her to be away overnight, she shall notify the husband and give him an opportunity to provide care for the child until her return.
h. Both parties shall be entitled to participate in and attend special activities in which the minor child is engaged, such as religious activities, school programs and graduation, sports and other extracurricular activities and programs.
i. At all times each party shall keep the other party advised as to where the child shall be, whether during visitation, vacations, holidays or otherwise and shall provide to the other party a telephone number where the child may be called.
j. Each party shall immediately notify the other of any illness or emergency that may arise while the child is in his or her presence or control, and the party who is notified shall have immediate access to the child regardless of where the child may be.
There is no way that the father can exercise these most detailed visitation rights if the child is in Colorado unless, for instance, the child is to be flown in from Colorado every other weekend, not to mention countless other required trips each year. We note too that the father is given the option to have the child even if the mother is only away overnight. For all practical purposes, the child is anchored within a geographical radius wherein these visitation rights can be reasonably exercised. The distance from Fort Lauderdale, Florida to Colorado does not allow for reasonable exercise of the stated visitation provisions. Thus, we conclude, prior court approval for the move was required unless the father's consent was obtained. We, therefore, affirm the trial judge's conclusion that the child's residence could not be changed to Colorado without court permission.
We conclude with the observation that we are most reluctant to reverse this cause. The parties have engaged in a vicious, malevolent, holy war since 1986, going through four circuit judges in the process. It is no wonder the child is in need of therapy. This problem cries out for final resolution.
We reverse and remand for a new evidentiary hearing on both the custody issue and the mother's request to move to Colorado.
AFFIRMED IN PART; REVERSED IN PART.
JAMES E. ALDERMAN, Senior Justice, concurs.
STONE, J., dissents with opinion.
STONE, Judge, dissenting.
I would disregard the subsequent recusal order, which appears to me to be sua sponte, and affirm as to all issues. In my judgment the modification order falls within the allowance recognized in Fischer v. Knuck. In any event, any error here should be deemed harmless. The judge thought the modification was resolved by the earlier order; this conclusion had been announced prior to the filing of the late affidavit and the lack of merit in the recusal affidavit is apparent.
NOTES
[1] There are considerable procedural problems presented as to the efficacy of the second affidavit, but for the purpose of this opinion we refer to it.