898 So.2d 1053 (2005)
Jennifer SHAFER, Appellant,
v.
Michael Wayne SHAFER, Appellee.
No. 4D04-3188.
District Court of Appeal of Florida, Fourth District.
March 16, 2005.
*1054 Kathleen M.P. Davis of the Law Office of Kathleen M.P. Davis, Chartered, Lake Worth, for appellant.
Rosanna Ferrari of the Law Office of Mathew S. Nugent, West Palm Beach, for appellee.
FARMER, C.J.
Mother appeals a non-final order enjoining her from moving herself and her nine year old son from Lake Worth to Orlando. The question is whether the trial court abused its discretion in granting the injunction. We think not and affirm.
Mother and father were divorced in 1998. The final judgment approved and adopted a marital settlement agreement (MSA). It provided for shared parental responsibility and designated the former wife as the primary residential parent. It set out specific and detailed provisions for the father's visitation. The schedule was based on the local timesharing guidelines, but the MSA provided for extra hours of visitation each week, as well as on alternate weekends. It also gave father the right of first refusal if mother felt the need for a babysitter or to place the child in daycare. With mother's acquiescence, father has exercised even more visitation than provided in the MSA. Until the events in suit, he had the child for overnight visit every Wednesday and on every other weekend from Friday afternoon until Monday morning, in addition to the holiday *1055 schedule. In recent years, the child has spent additional time with father while mother was working nights and attending school. In addition to that, father also sees the son approximately three times per week for sports activities. Father coached his son's baseball team for six of the past seven years. By all accounts, he and his son have a very close relationship.
Mother was recently admitted to law school in Orlando beginning with the fall 2004 semester. She had no closer alternative for law school. Rather than discussing her plans with father, she waited until three weeks before her move to tell him. Without raising the subject with father, mother enrolled their son in public school in Orlando, reflecting a major change from his attendance at the same private religious school since first grade. Before her admission to law school, the parents had already renewed the child's enrollment at the private school. Father prefers that the boy continue his education there.
After mother had already relocated to Orlando, father filed a petition to modify the final judgment to change the primary residential responsibility for the child or to add a relocation restriction and to grant the father visitation rights consistent with the visitation he has exercised over the past few years. Father included a motion for a temporary injunction to restore the status quo ante: that is, reversing the relocation and seeking to enforce the MSA.
Following an evidentiary hearing, the court granted the motion and enjoined any relocation pending further court order. In deciding that the move was not in the child's best interests the court considered all of the statutory factors. See § 61.13(2)(d), Fla. Stat. (2004). The court also stressed it's concern that mother had concealed her law school plans for months and had unilaterally enrolled the child in public school. The court found mother's actions inconsistent with shared parental responsibility, and that she was not likely to comply with substitute visitation in light of her conduct in moving from Palm Beach County.
In seeking a temporary injunction, the movant must show: (1) irreparable harm if the status quo is not maintained; (2) no adequate remedy at law; (3) a clear legal right to the relief requested; (4) that any public interest will not be disserved; and a substantial likelihood of success on the merits. Wexler v. Lepore, 878 So.2d 1276, 1281 (Fla. 4th DCA), rev. denied, 888 So.2d 625 (2004). On appeal the standard of review is whether the trial court abused its discretion in granting the injunction. Montville v. Mobile Med. Indus., Inc., 855 So.2d 212, 215 (Fla. 4th DCA 2003).
Here, mother argues that the temporary injunction is improper because in the absence of a residency restriction in the final judgment, relocation does not cause irreparable harm. She further suggests that father has an adequate legal remedy under the statute for substitute visitation. She contends that father cannot show a substantial likelihood of success on the merits of his petition to modify custody or to add a residence restriction to the final judgment because relocation is not a substantial change in circumstances to support modification. In addition, she argues the trial court erred in considering the relocation factors in section 61.13(2)(d) because she has not requested relocation. Because there was no relocation restriction in the final judgment, she maintains that she was free to move without consent of the father or the court.
For a modification of custody or visitation, the moving party must show a substantial change in circumstances and that the modification is in the best interests of the child. Chapman v. Prevatt, 845 So.2d 976, 981 (Fla. 4th DCA 2003). Mother is correct that courts have routinely *1056 held that relocation alone is not a substantial change in circumstances to support a modification of custody. In general, a custodial parent is free to move if there is no relocation restriction in the final judgment. See Bartolotta v. Bartolotta, 703 So.2d 1229 (Fla. 4th DCA 1998).
But if relocation is necessarily inconsistent with the terms of the final judgment, the court can restrict relocation in order to enforce the final judgment. Petrullo v. Petrullo, 604 So.2d 536 (Fla. 4th DCA 1992); Johnson v. Johnson, 455 So.2d 1332 (Fla. 4th DCA 1984). As the Fifth District observed in Giachetti v. Giachetti, 416 So.2d 27, 29 (Fla. 5th DCA 1982):
"Inherent in the visitation privileges granted to a non-custodial spouse by a judgment of dissolution is a command to the custodial spouse that such visitation privileges should not be unreasonably hampered, hindered or destroyed. What circumstances or conditions unreasonably hamper or destroy visitation privileges will vary from case to case, and because, by the very nature of the subject matter there are very few absolutes, the trial court must be allowed wide latitude in determining how the visitation rights of the parties are to be enforced."
Id.
In Petrullo this court held that, although there was no express relocation restriction provision in the final judgment, relocation was implicitly restricted by the detailed visitation provisions. Like the visitation schedule included in the final judgment in this case, the schedule in Petrullo specified which parent would have the child on various holidays and gave the non-custodial parent visitation every other weekend from Friday to Sunday. The schedule in Petrullo also provided that, when the mother's job required overnight absence, the father would have the option of providing care for the child until she returned. We concluded that "[f]or all practical purposes, the child is anchored within a geographical radius wherein these visitation rights can be reasonably exercised." 604 So.2d at 539. The mother's relocation out of state would not allow the father to exercise the visitation provisions specified in the final judgment. As a result, unless the father consented to the move, the mother required prior approval from the court. Id.
In arguing that she was free to move without court permission, mother relies on Bartolotta and Hayes v. Hayes, 578 So.2d 54 (Fla. 2d DCA 1991). In Bartolotta, we held that the custodial parent was not prohibited from relocating with the children where the final judgment and the parties' agreement did not restrict relocation. We distinguished Petrullo because Bartolotta's final judgment merely provided in general that the father would have "open, liberal" visitation; it did not include detailed visitation provisions. Bartolotta, 703 So.2d at 1230. General, liberal visitation is not necessarily inconsistent with the custodial parent's relocation. Liberal visitation could still be exercised if the custodial parent resides far away in another state. Id. Likewise, Hayes is distinguishable from Petrullo and the present case because the final judgment in Hayes merely granted the father "reasonable and liberal visitation." The father's visitation rights under the final judgment could still be accommodated if the mother and child moved.[1]
Bartolotta also emphasized that at the time, the case law had established a presumption *1057 in favor of allowing the custodial parent to relocate. Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996); Mize v. Mize, 621 So.2d 417 (Fla.1993). In 1997, the legislature enacted section 61.13(2)(d), Florida Statutes, stating that "[n]o presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent." The statute lists factors the court must consider in determining whether the residential parent should be allowed to relocate with the child.
In this case, the trial court carefully considered the factors in section 61.13(2)(d) in deciding that the move would not be in the child's best interest. Mother argues that the statute does not apply because she has not filed a request to relocate. But, because the trial court found that her relocation would not allow father to exercise the specific visitation provisions in the final judgment, there is an implied restriction on her ability to relocate without consent or court approval.
Mother ignores the fact that her relocation to Orlando places her in a position of being unable to comply with the specific visitation schedule required by the final judgment. To modify that visitation schedule, she would have to show a substantial change in circumstances and that modification was in the best interests of the child. That is, she would have to show that it was more in the child's best interests for him to move with her away from the father than it would be to modify custody or prevent her relocation in violation of the final judgment's specific custody/visitation provision.
Father's motion for an injunction sought to prevent the relocation of the child in order to enforce his existing rights under the final judgment and the MSA. See, e.g., Johnson, 455 So.2d at 1332. Even without a request to relocate, it was not improper for the court to consider the factors in section 61.13(2)(d) to decide whether to temporarily enjoin relocation. To enjoin mother's unilateral relocation required the court to consider the best interests of the child. Decker v. Lyle, 848 So.2d 501 (Fla. 2d DCA 2003); Mian v. Mian, 775 So.2d 357 (Fla. 2d DCA 2000). The Mian court noted that it is important for the trial court to resolve disputes regarding relocation as soon as possible because moving may result in wide-ranging and intense ramifications on the child. 775 So.2d at 358.
In this case, the trial court weighed a number of factors in deciding that the move was not in the child's best interests. The final judgment provided a detailed visitation schedule, and father has exercised substantially all his visitation rights, including a right of first refusal. Father had participated extensively in his son's activities. The court found that they have a very close relationship that will be affected if the son continues to live in Orlando. Father has shown that relocation will not likely improve the general quality of life for the child.
The court also emphasized its concern about mother concealing her relocation plans. Based on these factors, the court concluded it "cannot in good conscience allow this move at this time under these circumstances." Mother is not likely to comply with substitute visitation now that she has relocated, and substitute visitation may be inadequate to foster the type of *1058 continuing relationship that now exists between father and child in this case.
The evidence supports the trial court's findings. Although mother has provided frequent visitation in the past, evidence at the hearing regarding her recent actions supports the court's finding that she is not likely to comply with substitute visitation. In contravention of the purpose of shared parental responsibility, for several months mother concealed her plans to move to Orlando to attend law school, she made arrangements to move with the child, and she enrolled their son in public school  all without consulting father until shortly before the move.
The trial court's decision is based on the best interests of the child, even if the result is not in the best interests of the primary residential parent who is seeking to relocate. Kuntz v. Kuntz, 780 So.2d 1022 (Fla. 4th DCA 2001). The "desirability of maintaining continuity" may be a factor in deciding the child's best interests. See, e.g., § 61.13(3)(d), Fla. Stat. (2004). The trauma of separating from the primary residential parent may be less than the trauma of separating from familiar surroundings, family, friends, and the child's school. Hill v. Hill, 548 So.2d 705, 708 (Fla. 3d DCA 1989) (Schwartz, J., concurring); see also Mize, 621 So.2d at 424-25 (Shaw, J., concurring) (suggesting a number of factors courts may consider in deciding whether relocation is in a child's best interests).
We conclude that the mother has not shown that the trial court abused its discretion in granting the temporary injunction.
Affirmed.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] There were other problems with the temporary injunction issued in Hayes that distinguish it from this case. The injunction in Hayes was entered ex parte and the father's motion did not indicate whether any effort had been made to give the mother notice. Fla. R. Civ. P. 1.610(a)(1). In addition the father was not required to post a bond. Fla. R. Civ. P. 1.610(b). In this case the mother filed a written response to the motion for a temporary injunction. The parties received an evidentiary hearing, and the court required the father to post a bond.