DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HEATHER SEITH,**
Appellant,

v.

**RICHARD SEITH,**
Appellee.

No. 4D21-556

[March 2, 2022]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Michael J. McNicholas, Judge; L.T. Case No. 432011000792DRAXMX.

L. Lisa Batts of Stuart Law Group, P.A., Stuart, for appellant.

Karen O'Brien Steger of Steger Law, Stuart, for appellee.

WARNER, J.

A mother appeals a final order granting the father's petition for modification of timesharing and her own counterpetition to modify child support. The court modified the timesharing arrangement for the parties' minor son due to the mother's relocation. The court also modified the child support based upon the father's increase in income. We affirm the modification of timesharing, but we reverse the child support because the trial court made three errors. First, the court erred in misstating the number of overnights with the child that each party was allowed, which affects the child support calculation. Second, the court failed to include an income deduction order as mandated by section 61.1301(1)(a), Florida Statutes (2020). Finally, the court erred by including in the judgment incorrect child support guideline ratios, which affects the parties' responsibilities for collateral child expenses.

The parties were divorced in 2013, when their minor child was four years old. In the final judgment, the court provided a parenting plan with more time with the mother. At the time of the divorce, both parties were ophthalmologists. The mother was employed in a practice in Martin

County, and the father saw patients in a practice in both Martin and St. Lucie counties.

Four years after the final judgment, the mother's employment contract ended and was not renewed. She eventually took a position which required her to work in Fort Lauderdale. She relocated her residence to Lake Worth, Florida, which was forty-six miles from her previous residence, notifying the father only after her relocation was complete.

The father filed a petition to modify his timesharing, and the mother filed a counterpetition to modify child support. At the hearing on the modifications, the father testified that the relocation of the child disrupted his patient schedule in order to maintain his timesharing days. To minimize the driving, he had purchased a condominium in Lake Worth, where he and the child would stay when he picked the child up in the early evening for his visitation, and on Sundays when the child had to be in school the next day.

The court determined that the mother's relocation impeded the timesharing schedule and required the father to revise his business schedule, concluding that the move constituted a substantial, material, and unanticipated change of circumstances. The court then modified the timesharing order, giving the father additional overnights in the summer schedule. In its ruling, the court also granted the mother's petition to modify alimony, increasing the child support in accordance with the child support guidelines.

When making the calculations on the guidelines scoresheet, however, the court used 180 days as the number of overnights that the child would spend with the father after the modification, which misstated the actual overnights the father would spend with the child. In addition, the court determined that the child support guidelines' ratios, which affect how collateral child expenses are allocated, were 50/50, when in fact the ratios were 66.88% for the father, and 33.12% for the mother. The wife appeals the final judgment.

## Modification of Timesharing Plan

"A trial court's order modifying a parenting plan is reviewed for an abuse of discretion." *Schot v. Schot*, 273 So. 3d 48, 50 (Fla. 4th DCA 2019). Thus, on appeal, the decision should be affirmed when "there is competent, substantial evidence supporting the trial judge's conclusion."

*Hollis v. Hollis*, 276 So. 3d 77, 79 (Fla. 2d DCA 2019) (quoting *McKinnon v. Staats*, 899 So. 2d 357, 359 (Fla. 1st DCA 2005)).

Section 61.13(3)–(6), Florida Statutes (2020), govern the creation and modification of parenting plans, including timesharing arrangements. "A determination of parental responsibility, a parenting plan, or a time-sharing schedule may not be modified without a showing of a substantial, material, and unanticipated change in circumstances and a determination that the modification is in the best interests of the child." § 61.13(3), Fla. Stat. (2020). Although relocation alone is not considered a substantial change in circumstance warranting a change of a parenting plan, where it interferes with the parenting plan established by the court in a final judgment, a court may restrict relocation. *See Shafer v. Shafer*, 898 So. 2d 1053 (Fla. 4th DCA 2005).

In this case, rather than restrict the mother's ability to relocate, the court made a modest adjustment of timesharing. The court found an unanticipated and substantial change in circumstance, as the mother's change of jobs and necessary relocation was unanticipated. Further, the court found the move constituted a "substantial" and "material" change, finding that mother's move "impede[d] the initial timesharing schedule." This caused not only a disruption for the child, but also for the father's work schedule. Finding it in the child's best interest not to be shuffled as often between residences, the court made a modest adjustment of the timesharing schedule, which would have the parents "spend[ing] less time traveling in order to accommodate the child's time with each parent, and would allow the child a longer continuous period of time in which to form a better bonding relationship with each parent." The evidence supports the court's determinations.

The mother also maintains that this case is like *Halbert v. Morico*, 27 So. 3d 771 (Fla. 2d DCA 2010). We disagree. In *Halbert*, after the final judgment established rotating custody of the parties' minor child, the father changed his employment and moved forty-five miles away from the mother's home. The mother petitioned for modification to change primary custody to her. Opposing the change, the father testified that he could drive the child to and from school on the days that he had custody, and that his employer was willing to provide him flexibility in his schedule. The trial court granted the mother's petition to modify the arrangement to provide that the minor child reside with the mother during the school week. On appeal, however, a majority of the panel reversed. Although the majority recognized that the father's relocation would result in longer drives to and from school and school-related activities, the majority did

not consider the change as so substantial as to change the custody arrangement. *Id.* at 773.

Unlike *Halbert*, in this case the court did not change the custody arrangement. The mother remained with the majority of the timesharing. The father, admirably, made significant changes, including the purchase of a condominium, and the extra travel to accommodate the mother's relocation. The father did not seek to modify the entire weekday schedule during the school year, but only sought to make a modification to the summer schedule which as mother admits was a change that resulted "in a net gain of six (6) overnights" a year to the father's timesharing with the minor child.

This modest adjustment also makes this case different from *Hollis v. Hollis*, 276 So. 3d 77 (Fla. 2d DCA 2019), also relied on by the mother. There, about six months after a final judgment which allowed the mother the majority of time with the children, the parties both filed petitions for modification of that arrangement. The trial court granted the father with majority timesharing without showing any basis for the change other than the father's relocation forty-seven miles from the mother. The appellate court reversed, noting that relocation alone was not a substantial change in circumstance. The court remarked that the trial court failed to elaborate orally or in its order how the evidence "weighed for or against modification." *Id.* at 79. On the other hand, in this case the court gave an explanation as to why the relocation and distance caused a disruption for the child and for the father's medical practice.

On this record, competent substantial evidence supports the court's finding of unanticipated, substantial material change in circumstances and that the modification of the summer schedule was in the best interests of the minor child. Accordingly, the court did not abuse its discretion.

## Modification of Child Support

The mother filed a counterpetition for modification of child support. In her petition and at the final hearing, the mother testified that the original parenting plan allowed the father 144 overnights with the child and the mother 221 overnights. During closing argument, the father's counsel also relied on the original plan's allowance of 144 overnights. Despite this, in the final judgment, the court stated that "[u]nder the initial timesharing plan, the Former Husband has the child 162 overnights and the Former Wife has the child 203 overnights." The court then determined that "[u]nder the new timesharing schedule, the Former Husband has the child

4

180 overnights and the Former Wife has the child 185 overnights." The court used these figures in the child support guidelines schedule to calculate each party's share of child support.

As the mother notes, the court misstated the number of overnights allowed to the father under the original timesharing plan, which was 144. The court's new plan resulted in six additional overnights for former husband. Importantly, on appeal the father does not take issue with former wife's calculation of six as the number of additional overnights that he receives under the new plan.

The number of overnights which children spend with each parent is part of the formula for calculating the amount of child support allocated to each parent. *See* § 61.30(11)(b), Fla. Stat. (2020). Therefore, these amounts must be correct to obtain the required child support under the guidelines. The court should recalculate the child support award using the correct number of overnights. *See Murphy v. Murphy*, 313 So. 3d 237, 239–40 (Fla. 2d DCA 2021).

## Income Deduction Order

The mother also argues that the court erred in failing to require payment of child support through the Florida State Depository with an income deduction order, along with the arrears required in the final judgment. Instead, the court ordered that child support be paid "directly to the wife." We agree that the court was required to issue an income deduction order for the child support.

Section 61.1301(1)(a), Florida Statutes (2020) states, "Upon the entry of an order establishing, enforcing, or modifying an obligation for . . . child support . . . other than a temporary order, the court *shall* enter a separate order for income deduction if one has not been entered." (Emphasis supplied). The statute is mandatory. *See Dorsett v. Dorsett*, 902 So. 2d 947, 953 (Fla. 4th DCA 2005) ("It is unambiguous from both the statutory language and its judicial interpretation that every child support order is to be accompanied by an income deduction order.").

## Child Support Guidelines Ratio

Finally, the mother argues that the court erred by failing to use the correct child support guideline percentages, which establish the ratio of each party's responsibility for collateral child support items, such as medical expenses not covered by insurance. The final judgment states

that: "[t]he new child support guideline ratios are 50% for the Former Husband and 50% for the Former Wife." We agree that the court erred.

In *Julia v. Julia*, 263 So. 3d 795 (Fla. 4th DCA 2019), we determined that "absent some logically established rationale in the final judgment to the contrary, collateral child support expenses must be allocated in the same percentage as the child support allocation." *Id.* at 797 (quoting *Zinovoy v. Zinovoy*, 50 So. 3d 763, 764–65 (Fla. 2d DCA 2010)). That portion of the trial court's post-judgment order establishing the ratio was reversed and remanded. On remand, we directed that "the trial court may provide a 'logically established rationale' for the disparate collateral support percentages. Otherwise, the trial court must allocate the collateral child support expenses in the same percentage as the regular child support allocation." *Id.* at 797–98.

In this case, the original final judgment stated that "[t]he parties shall share all uncovered health expenses for the minor child *in proportion to their child support obligations*." (Emphasis supplied). That is consistent with *Julia*. Unfortunately, the original final judgment then stated with respect to such expenses, "[t]he non-paying party shall reimburse the other party fifty (50%) percent of said cost within twenty (20) days thereafter." If this was meant to contradict the first sentence, no explanation was given for the difference.

In the modification judgment, the court determined that the child support guideline ratios were split 50/50, but the child support guidelines schedule attached to the judgment shows that the percentages of financial responsibility as 66.88% for the father and 33.12% for the mother. Thus, the court's determination was contrary to *Julia* because no explanation was given for modifying the child support guideline ratios.

The father argues that the court's determination was consistent with the original final judgment. The final judgment, however, is inconsistent, and no explanation is given for its apparently contradictory provisions. Nor is there any explanation by the court in the modification proceeding to justify a departure from the child support guidelines schedule percentages. Accordingly, we reverse on this issue and remand for the court to provide its basis for the ratios or to adopt the ratios set forth in the child support guidelines schedule.

6

## Conclusion

The court modified the timesharing plan because of the impact that the mother's unanticipated relocation had on the existing timesharing arrangement, the father's practice, and the best interest of the child. The court did not abuse its discretion. The court did, however, err in calculating child support, as it misstated the number of overnights with the child allowed to each party. The court also erred in failing to enter a mandatory income deduction order for the child support. Finally, the court erred in determining that the child support guidelines ratios were 50/50, when that did not comport with the schedule attached to the final judgment, and no reason was given for the deviation. Thus, we affirm the judgment as to modification of timesharing, but reverse the child support and remand for the court to readdress the support as to the issues addressed in this opinion.

*Affirmed in part and reversed and remanded in part with instructions.*

GROSS and ARTAU, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

7