589 So.2d 1363 (1991)
Stephen G. PROM, Appellant,
v.
Leah Annette PROM, Appellee.
No. 91-1033.
District Court of Appeal of Florida, First District.
November 4, 1991.
Lester Makofka, and Michael J. Korn of Christian, Prom, Korn & Zehmer, Jacksonville, for appellant.
Barry L. Zisser and Nancy N. Nowlis, Jacksonville, for appellee.
PER CURIAM.
The former husband appeals a final judgment of dissolution of marriage. We reverse and remand for reconsideration of the entire disposition.
The parties were married on August 27, 1976. Three children were born of the marriage. The parties separated on March 31, 1990, and the trial court entered a final judgment of dissolution of marriage on March 8, 1991. Stephen Prom practices as an attorney and partner of Christian, Prom, Korn & Zehmer, P.A., with annual earnings of $96,000.00. Leah Prom teaches school, earning approximately $20,000.00 a year. Both are in good health. Leah will, by agreement, be the primary residential parent of the three children.
*1364 The legislature directs courts in dissolution proceedings to consider certain factors and "distribute between the parties the marital assets and liabilities in such proportions as are equitable." § 61.075(1), Florida Statutes (1989). The starting point for equitable distribution is generally said to be an even split of the marital assets. Ervin v. Ervin, 553 So.2d 230 (Fla. 1st DCA 1989). However, equitable distribution need not be an exact 50-50 split, since the court may award one spouse a disproportionate share of the assets under certain circumstances such as special equities in property, extraordinary contributions during the marriage, or to balance a permanent periodic alimony award. Ervin. If the trial court decides to make an unequal division, the court should make findings which support its conclusion. Barrs v. Barrs, 505 So.2d 602 (Fla. 1st DCA 1987).
A review of the final judgment of dissolution of marriage entered in this case indicates that the trial court gave Leah the marital home along with its furnishings and awarded Stephen certain duplexes.[1] The court made no findings of value for the home or the duplexes. As to the liabilities, the trial court made Leah responsible for the first mortgage on the home in the amount of $55,000.00 and for her car payment. Stephen must pay the second mortgage on the home in the amount of $45,000.00, the indebtedness owed to Marcus Prom in the amount of $51,000.00[2], and all of the debts reflected on his financial affidavit with the exception of the first mortgage.
To support the distribution, the trial court made the following findings:
L. The Wife has claimed an interest in the Husband's professional association, Christian, Prom, Korn & Zehmer, and bases her interest on the execution of instruments encumbering joint marital property, the proceeds from which encumbrance were invested by the Husband in the professional association; additionally the professional association was formed during the course of the marriage and the Wife alleges that she has labored tirelessly to assist the Husband in his professional endeavors, thereby forming the predicate for her claim of an interest in the value of the professional association. The Wife's claim is a 12 1/2% interest in the professional association and the Wife relies upon the Florida Supreme Court decision rendered in the case of Thompson v. Thompson, 576 So.2d 267 (1991).
M. The Wife made an ore tenus motion for the Court to reserve jurisdiction with regard to receiving testimony from an expert witness relative to the value of the Husband's interest in the professional association and its intended good will, based upon the production of the books and records of that professional association for audit. The Court will look favorably upon that motion and will reserve jurisdiction for such purpose.
N. During the course of the marriage, the Husband has made various investments in rental housing with his brother, one of his law partners, and with the Wife. The Wife has no working knowledge of those investments nor of the income or expenses from those investments.
O. The Wife has requested the granting to her of the Husband's right, title and interest in and to the marital domicile, together with the furniture, furnishings and fixtures contained therein as a part of lump sum alimony and equitable distribution. The address of the marital domicile is 2802 South 2nd Street, Jacksonville Beach, Florida, 32250. Additionally, there were two mortgages and a promissory note which the Husband claims encumbers the property. The Court finds that the original mortgage in the amount of approximately $55,000 is a valid encumbrance which should be assumed by the Wife. The proceeds received by the parties from the second mortgage were utilized by the Husband in investments in his law firm, and in his real estate holdings. The alleged debt *1365 owed on a third mortgage the Court finds not to be a third mortgage but only a promissory note signed by both parties, the payee of which note is the Husband's brother with whom he has been engaged in business. The Wife has requested that the Court order the conveyance of the Husband's interest to the Wife as lump sum alimony, with the assumption by the Husband of the second mortgage and the obligation owed to his brother, Marcus Prom. The Court finds that such disposition of these debts and liabilities would in fact be a method of effecting an equitable distribution and a satisfaction of the Wife's claim against the Husband's professional association.
P. The Wife has announced her willingness to convey any interest which she has or which she may ever have had in and to the various rental properties owned by the parties or either of them during the course of the marriage as a part of equitable distribution.
Q. The Wife possesses a 1989 Isuzu Trooper automobile with a substantial encumbrance on that vehicle. The Husband has previously been paying the payments for that automobile in the amount of $478.00 per month pursuant to his agreement and an Order of this Court.
R. The Wife has agreed to assume the obligations for that automobile provided that the Court requires the Husband to pay the alimony and child support requested by her.
S. At the time that the Wife and Husband met and married, the Husband was in undergraduate school. The Wife then went to work full time, would drive the Husband to and from law school, dropping him off there in the morning and picking him up late at night, enabling the Husband to study seven days a week and based upon the uncontradicted testimony of the Wife, up to eleven hours per day. The Court finds that the Wife thereby assisted the Husband substantially in enabling him to reach his present status in life that he presently enjoys.
... .
W. During the course of the marriage, the Husband has expended marital assets and funds on his lifestyle including making surfing trips and taking skiing vacations around the country. The Husband admitted having had extramarital relationships while the parties were living together and that he would make certain of these trips, in the company of a female to whom he was unrelated, and would expend money which would have been marital funds, in the furtherance of his romantic endeavors.
Although the trial court's distribution was intended to be equitable, meaningful appellate review is not possible because the trial court failed to make specific findings as to the value of the marital assets. Without determining the value of the assets, the court's other findings could not be effectuated. The lack of findings as to the value of the wife's interest in the law firm[3], the duplexes, the Isuzu Trooper, the marital home and its furnishings, and the current balance of liabilities contained in the former husband's financial affidavit prohibit this court from determining what sort of distribution was made, or even intended, by the trial court. Accordingly, we reverse the distribution of assets and liabilities and remand for further proceedings.
We also direct the court to revisit the award of rehabilitative alimony.[4] The *1366 former wife testified that "I would like to go back and get a masters and a Ph.D. so I can earn the money that is going to be needed for these kids." In the final judgment the trial court determined:
X. The Court finds that the Wife has foregone pursuing a professional career so that she could assist the Husband and therefore the Wife would be entitled to rehabilitative alimony.
Y. The Wife has expressed a desire to finish her education, secure a Master's degree and secure a Doctorate. The Court finds the Wife's request is to be reasonable and should be granted.
The award raises questions in several respects.[5] First, the award, as set out in footnote four, contains no amount to be paid to the former wife on a monthly basis. There is nothing in the record which indicates the average cost of obtaining a masters and doctorate degree nor is there any evidence which supports the duration of the award. Additionally, the record contains no evidence that either degree would increase Leah's salary. Even if the record could support a finding of Leah's need for rehabilitative alimony, the evidence does not support the trial court's finding that the former husband has the ability to pay. The final judgment requires Stephen to pay three thousand dollars a month in child support. When added to alimony (assuming the trial judge intended to order one thousand dollars a month) and marital debt service, Stephen appears to be left with less than ten percent of his net income.[6] We reverse the award of rehabilitative alimony and remand this issue to the trial court for further consideration. While we do not find error in the child support, the trial court may reconsider all aspects of the financial disposition on remand.
At trial the parties stipulated that the issue of attorney's fees would be decided at a separate hearing. However, the trial court overlooked this stipulation and awarded attorney's fees in the amount of $8,000.00 to Leah without following the procedure set out in Florida Patients Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). Since appellee concedes error in the trial court's grant of fees in the absence of any evidentiary showing, or findings, in support thereof, we reverse the award of attorney's fees.
We remand this matter to the trial court for further proceedings consistent with this opinion.
BOOTH, WOLF and KAHN, JJ., concur.
NOTES
[1] Each party received the car customarily driven by that person.
[2] See paragraph "O" of the final judgment cited infra.
[3] We do not approve the reservation of jurisdiction to evaluate the law practice after all other assets and liabilities are distributed and support awards are determined. (Paragraph "M" supra.) Accordingly, we view the final judgment as lacking in any indication of the law firm's value. We decline to assume the firm's value would equal the equity in the home.
[4] The Husband shall pay as and for rehabilitative alimony for the Wife, commencing on the first day of the month following the enrollment by the Wife in a program leading to the securing of a Master's Degree, and continuing on the first day of each and every month thereafter until the first day of the month following her completion of the program leading to a Master's Degree, or twenty-four months, or until her remarriage, whichever of the aforesaid events first occurs. Provided, however, if the Wife is involved in a program leading to a Doctorate Degree, then and in that event, the rehabilitative alimony provisions set forth herein shall continue until the completion of the program leading to the securing of a Doctorate Degree, or a period of sixty months from the date that the Wife enters into such program, or until her remarriage, whichever event shall first occur; provided, however, that the requirements set forth herein shall only be effective during the time that the Wife is enrolled in a graduate program.
[5] Were alimony the only issue, we might hesitate to find an abuse of discretion. We believe reversal is required, however, to allow the trial court to fashion a scheme of alimony, child support, and distribution of assets and liabilities which taken as a whole accomplishes equity between the parties.
[6] Again, the absence of factual findings in this regard has not aided appellate review.