611 So.2d 570 (1992)
Janet E. ATKINS, Appellant,
v.
Danny D. ATKINS, Appellee.
Nos. 91-3402, 92-104.
District Court of Appeal of Florida, First District.
December 31, 1992.
Rehearing Denied February 8, 1993.
*571 Marcia K. Lippincott, of Marcia K. Lippincott, P.A., Orlando, for appellant.
Steven J. Baker, of Baker, Duke & Tipton, P.A., Pensacola, for appellee.
WEBSTER, Judge.
Appellant (the wife) seeks review of a final judgment of dissolution of marriage. She raises two issues: (1) whether the amount of permanent periodic alimony awarded by the trial court is so inadequate as to constitute an abuse of discretion; and (2) whether the trial court's distribution of marital assets and liabilities contravenes section 61.075, Florida Statutes (1989), thereby shortchanging the wife. We conclude that the amount of permanent periodic alimony awarded by the trial court does constitute an abuse of discretion. Therefore, we reverse.
Section 61.08(2), Florida Statutes (1989), which controls in this case, reads:
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
The court may consider any other factor necessary to do equity and justice between the parties.
In Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980), the supreme court said that:
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
The evidence received at the final hearing established that the parties had been married for approximately seventeen years. No children were born to the parties. For the four years before the parties separated in 1990, their average gross annual income had been approximately $77,000.00. For many years, they had enjoyed a comfortable lifestyle. Both parties were in relatively good health, and both were relatively young (41).
The husband has a baccalaureate degree in business. He has been a public adjuster since 1978; and has been self-employed in that profession since 1984. His financial affidavit offered at the final hearing reflects net monthly income (after deducting from gross income federal income *572 tax, Social Security and health insurance payments) of $7,668.00. His financial affidavit also reflects monthly expenses totaling $6,445.20. However, this latter figure includes a monthly contribution of $1,200.00 to an individual retirement plan, which may not properly be classified as an "expense." Therefore, the husband's monthly expenses are actually $5,245.20.
Before the parties married, the wife had completed approximately three and one-half years of college. She has not, however, earned any degree. She had been employed throughout the marriage, principally in clerical positions. In addition to her regular employment, the wife had always assisted the husband in his business, to the extent that the husband never had to hire a secretary. For approximately two years prior to the parties' separation, the wife worked full time in the husband's business. She has never earned more than $16,000.00 per year; and her average gross annual earnings have been between $12,000.00 and $14,000.00. After the parties had separated, the wife began her own business as a personal property appraiser. At the final hearing, she testified that she was realizing no profit from the business. The trial court imputed gross annual income to the wife of $14,000.00, based upon her past work experience, and there is evidence to support such a decision. The wife's financial affidavit offered at the final hearing reflects monthly expenses totaling $5,616.00. However, the trial court found that "the Wife's financial affidavit is significantly inflated by expenses the Husband is currently paying," and there is ample evidence to support such a finding.
The final judgment reflects that the husband is to receive marital assets worth approximately $154,453.00 (or 53.24 percent of all marital assets), net of any outstanding indebtedness attributable to those assets; and that the wife is to receive marital assets worth approximately $135,637.00 (or 46.76 percent of all marital assets), net of any outstanding indebtedness attributable to those assets. Regarding this distribution of the property, the trial court said:
The marital property is not being divided precisely in half. [The husband] will be awarded a larger proportion of the assets. However, his portion consists of two homes and business assets, as well as the liabilities attached to them. With the sluggish real estate market, those assets may not be as readily convertible to the same cash value. [The wife], on the other hand, will enjoy a greater liquidity in her portion of the assets. From the investment of those assets, she will have additional income. Even with an equitable distribution of the parties' property, the assets will not produce enough income for [the wife] to appropriately support herself.

(Emphasis added.) Without explaining how the figure was arrived at, the trial court awarded the wife $750.00 per month in permanent periodic alimony.
Canakaris establishes the following test for use in determining whether the trial court has abused its discretion in ruling on matters such as that which is the subject of this appeal: "If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." 382 So.2d at 1203. Applying this test to the award of permanent periodic alimony made by the trial court, we are convinced that, considering all of the relevant factors, the award is so unreasonably low as to constitute a clear abuse of discretion.
The final judgment reflects that the wife is to receive approximately $92,000.00 in liquid assets (the balance of the assets distributed to her consist principally of a car, household furnishings, clothing and jewelry); and that the husband is to receive approximately $67,500.00 in liquid assets (the balance of the assets distributed to him include the marital home, a one-half interest in a vacation condominium, a car, household and office furnishings and jewelry). However, the wife has no home. Moreover, the $14,000.00 in gross annual income from employment which the trial court attributed to the wife breaks down to approximately $1,050.00 per month in net income. If one adds to that figure the *573 $750.00 that the husband has been ordered to pay in alimony, the resulting total net monthly income for the wife is approximately $1,800.00. If one then subtracts from the husband's net monthly income of $7,668.00 the $750.00 in alimony which he has been ordered to pay, the resulting total net monthly income for the husband is approximately $6,918.00; or almost four times that of the wife.
Recognizing that the wife's financial affidavit is "significantly inflated" because it lists expenses which were being paid by the husband, the fact remains that the wife, who had enjoyed "many of the accouterments of fine living" during the marriage, is now forced to exist on a relatively meager income; whereas the husband will continue to enjoy a lifestyle very much like that the parties enjoyed during the marriage. Even after the husband has paid the $750.00 in alimony and his monthly expenses of $5,245.00, he will still have roughly $1,670.00 (or almost as much as the wife's net monthly income) remaining.
Obviously, "it is the exceptional case when a couple's resources and earnings prove sufficient to maintain two independent households in the same manner as the original household." Pirino v. Pirino, 549 So.2d 219, 220 (Fla. 5th DCA 1989). "However, a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Canakaris, 382 So.2d at 1204. Accord Wright v. Wright, 577 So.2d 1355 (Fla. 1st DCA), review dismissed, 587 So.2d 1331 (Fla. 1991).
It is apparent that the amount of alimony awarded by the trial court is insufficient to meet the needs of the wife, as those needs "have been established by the marriage of the parties." Canakaris, 382 So.2d at 1201. On the contrary, it confines the wife to a standard of living considerably lower than that established during the marriage; while the husband continues to enjoy a relatively affluent lifestyle. The wife's needs are considerably greater than can be met by the amount of alimony awarded; and the husband has the ability to contribute considerably more than the amount awarded. Therefore, on the facts of this case, the trial court's award of $750.00 per month in permanent periodic alimony constitutes a clear abuse of discretion. See Sinclair v. Sinclair, 594 So.2d 807 (Fla. 3d DCA 1992).[*]
Our conclusion regarding the award of permanent periodic alimony will require the trial court on remand to revisit the entire scheme of distribution. See, e.g., Sweeney v. Sweeney, 583 So.2d 398 (Fla. 1st DCA 1991). Accordingly, we find it unnecessary to reach the wife's second issue. However, for the benefit of the trial court, we note that "marital assets" include all "[a]ssets acquired ... during the marriage, individually by either spouse or jointly by them." § 61.075(3)(a)1., Fla. Stat. (1989). We note, also, that, while "a 50/50 split of marital assets is not required, [it] is a good starting point." Moore v. Moore, 543 So.2d 252, 256 (Fla. 5th DCA 1989). Accord Ervin v. Ervin, 553 So.2d 230 (Fla. 1st DCA 1989). Cf. Prom v. Prom, 589 So.2d 1363 (Fla. 1st DCA 1991) (distribution need not be an exact 50/50 split, but trial court must fully explain unequal distribution).
REVERSED and REMANDED.
*574 BOOTH, J., concurs.
SHIVERS, J., dissents with written opinion.
SHIVERS, Judge, dissenting.
Because I believe reasonable persons could differ as to the propriety of the award of permanent periodic alimony, I find no abuse of discretion and would affirm the decision of the trial court on that issue. Antonini v. Antonini, 473 So.2d 739, 741 (1st DCA 1985), rev. den., 484 So.2d 7 (Fla. 1986); Vandergriff v. Vandergriff, 456 So.2d 464, 466 (Fla. 1984). In deciding the alimony award, the trial court considered the "relevant economic factors" set forth in section 61.08(2), Florida Statutes (1989).
The record demonstrates the ability of Appellee, the former husband, to provide additional funds to Appellant. That, however, is only part of the test for determining the suitability of the alimony award. Kuvin v. Kuvin, 442 So.2d 203, 205 (Fla. 1983). Under Canakaris, the second factor is the needs of the other spouse, as demonstrated in the record. See 382 So.2d at 1201-02. The trial court stated that the former wife's "training and experience will not provide her with the same luxuries" to which the parties were accustomed during their marriage (emphasis added). However, because she had another ample source of support, the former wife failed to show the need for any additional amounts of permanent periodic alimony at the time of the final judgment of dissolution of marriage. Canakaris, 382 So.2d at 1201; Pill v. Pill, 559 So.2d 364 (Fla. 5th DCA 1990) (weekly income, lawn and pool care, and home repairs provided to former wife by her live-in boyfriend were sufficient to warrant downward modification of former husband's alimony obligation). Among the circumstances considered by the trial court pursuant to section 61.08(1) was the fact that Appellant "has effectively resided with Mr. Namey and assisted him in his business. In exchange, Mr. Namey has provided her the amenities of life." Coupled with the competent evidence that the former wife "significantly inflated" her expenses, some of which the former husband was paying, the evidence of Appellant's comfortable financial condition effectively disposed of any present claim of additional needs. Lanier v. Lanier, 594 So.2d 809, 811 (Fla. 1st DCA 1992); Pill v. Pill, 583 So.2d 1114 (Fla. 5th DCA 1991). The facts in the case at bar are distinguishable from those in Sinclair, 594 So.2d at 807, 809, where the former husband had the ability to pay and the award of permanent periodic alimony was insufficient to meet the former wife's needs and "confine[d] her to a style of living far below that enjoyed by the parties during the marriage."
Of course, should the former wife's financial circumstances undergo a substantial, material and unanticipated change, then the law provides appropriate procedures for seeking a modification of an alimony award. Section 61.14, Florida Statutes (1989); Zipperer v. Zipperer, 567 So.2d 916, 918 (1st DCA 1990), rev. den., 581 So.2d 1312 (Fla. 1991). Accordingly, I would affirm the award of permanent periodic alimony.
As to the scheme of equitable distribution, I would reverse the former husband's award of bank accounts totaling $18,969.91, as the finding that the entire amount is "separate property" is unsupported by the record. Appellee testified that the sum of $11,756.67, the balance remaining in the Am-South account, was the result of his post-separation work. However, there was no testimony that the additional $7,213.24 in funds constitutes non-marital assets. Thus, the trial court erred in designating the sum of $7,213.24 as Appellee's separate property.
Accounts receivable should have been valued as a tangible marital asset, to the extent they were earned on claims processed during the marriage. See Rodriguez v. Rodriguez, 550 So.2d 16, 18 (Fla. 3d DCA 1989); Carr v. Carr, 522 So.2d 880, 885 (Fla. 1st DCA 1988) (finding error in trial court's exclusion of accounts receivable from marital assets). Contrary to Appellee's position that a future distribution of any of the uncollected marital accounts receivable is unfeasible because the amount that actually will be collected is *575 speculative, I recommend an order providing for proper distribution of whatever amounts actually are collected in the future. Accounts receivable should be adjusted by any business expenses, such as are noted on Appellee's financial affidavit and on Schedule C of the 1986-89 tax returns of the Atkins and Associates sole proprietorship.
NOTES
[*] The dissent is of the opinion that the amount of permanent periodic alimony awarded is not an abuse of discretion. It bases its conclusion upon the trial court's finding that the wife was "effectively resid[ing]" with a male friend and assisting him in his business, in return for which the friend was providing the wife with "the amenities of life." Apparently, the dissent regards this finding as "evidence of Appellant's comfortable financial condition" sufficient to support the trial court's award. See infra, at 574. However, as we read the portion of the final judgment relied upon by the dissent, it relates to the trial court's justification for imputing a gross annual income of $14,000.00 to the wife, despite the wife's testimony that her new business was not realizing a profit. Had the trial court intended to reduce the amount of permanent periodic alimony for the reason suggested by the dissent, it would have committed error because it makes no findings regarding either the nature or the value of "the amenities of life" referred to, and our review of the record fails to reveal evidence from which such findings could be made.