906 So.2d 386 (2005)
Michael Lee GRIFFIN, Appellant,
v.
Theresa M. GRIFFIN, Appellee.
No. 2D04-1877.
District Court of Appeal of Florida, Second District.
July 27, 2005.
*387 Eileen H. Griffin of Griffin & Associates, P.A., Brandon, for Appellant.
Deborah Cerminaro Eldridge of Eldridge Law Office, P.A., St. Petersburg, for Appellee.
LaROSE, Judge.
This is an appeal from a judgment dissolving a marriage. Michael Lee Griffin, the Husband, challenges the trial court's imputation of income and the amount of permanent periodic alimony awarded to him. The trial court erred in imputing full-time income to the Husband without finding that he could hold a full-time job. Additionally, the alimony award appears inadequate in light of the Husband's claimed needs and the Wife's ability to pay. Accordingly, we reverse for reconsideration of the amount of income to impute and the amount of alimony to be awarded to the Husband.

Imputation of Income
"A court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997). The trial court's imputation of income for the purpose of determining spousal support must be based on substantial, competent evidence. Gruber v. Gruber, 857 So.2d 329 (Fla. 2d DCA 2003); Connell v. Connell, 718 So.2d 842, 843 (Fla. 2d DCA 1998); Brown v. Brown, 784 So.2d 464 (Fla. 5th DCA 2001). Specific findings of fact must support the imputation decision. Zubkin v. Zubkin, 823 So.2d 870, 871 (Fla. 5th DCA 2002).
Because of a downturn in the insurance industry, the Husband's income decreased gradually during the fourteen-year marriage from $80,595 in 1991 to $45,415 in 1995. His income plummeted to zero following a 1996 automobile accident. The Husband remained unemployed with no income at the time of trial in 2002. At trial, the Husband presented evidence that he was unable to work outside the home due to chronic pain and depression. The Wife argued that the Husband could work.
The trial court considered testimony from the Husband's neurologist, Dr. Martinez, including the neurologist's testimony *388 from a previous federal court proceeding.[1] Dr. Martinez testified that the Husband was totally disabled. He opined that the Husband was unable to work full-time, even in a light-duty sedentary job.[2] A vocational rehabilitation expert testified that the Husband could return to light and sedentary work, and that he could place the Husband in such a job based on the Husband's vocational skills. The Husband testified that his psychiatrist recommended that he find a part-time, flexible job that would accommodate his limitations.
Despite his pain and depression, the Husband continued to assist the Wife with various household chores and child-rearing, as he had throughout the marriage. He also helped her with her Party Lite business by lecturing, stuffing envelopes and handling mail, packing orders, moving five-to-ten-pound boxes, and running errands.
The trial court found that the Husband's activity level called his subjective complaints into question and concluded that the Husband should be working. The trial court imputed income to him in the amount of $40,000 per year. Based on the Husband's last full-time income level of $45,415, the trial court obviously contemplated that the Husband could be employed on a full-time basis. Yet, the amended final judgment reflected the trial court's "concern regarding the Husband's ability to return to work full time versus part time." These expressed concerns, coupled with Dr. Martinez's testimony, demonstrate a lack of substantial, competent evidence to support a finding that the Husband could obtain full-time employment earning $40,000 per year.
The record is sufficient, however, for the trial court to have imputed some income to the Husband. See, e.g., Andrews v. Andrews, 867 So.2d 476, 478 (Fla. 5th DCA 2004). We reverse the amount of income imputed to the Husband and remand to the trial court for further proceedings to establish a level of imputed income for the Husband supported by substantial, competent evidence. Because over two years have passed since entry of the amended final judgment, the trial court may find it appropriate to take additional evidence regarding the Husband's employment prospects. See Stewart v. Rich, 664 So.2d 1145, 1149 (Fla. 4th DCA 1995).

Alimony
The trial court awarded the Husband $3000 per month, or $36,000 per year, in permanent periodic alimony. The primary criteria to determine alimony are the requesting party's need coupled with the responding party's ability to pay. Pirino v. Pirino, 549 So.2d 219, 220 (Fla. 5th DCA 1989). A purpose of permanent, periodic alimony is to allow the requesting spouse, consistent with his needs, to maintain the standard of living established by the parties during the marriage and to ensure that, viewing the totality of the circumstances, one spouse is not "shortchanged." Canakaris v. Canakaris, 382 *389 So.2d 1197 (Fla.1980) (citing § 61.08(2), Fla. Stat.). The marital standard of living is generally that last shared by the spouses. Cardillo v. Cardillo, 707 So.2d 350, 350 (Fla. 2d DCA 1998). Accordingly, the trial court must consider all of the following factors in determining a proper alimony award:
(a) The standard of living established during the marriage;
(b) The duration of the marriage;
(c) The age and the physical and emotional condition of each party;
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each;
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment;
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party;
(g) All sources of income available to either party.
§ 61.08(2), Fla. Stat. (2003); Yauch v. Yauch, 901 So.2d 920 (Fla. 2d DCA 2005).
At the time the petition for dissolution was filed, the Husband and Wife had been married for fourteen years. The Wife became a Party Lite consultant before the Husband's accident. Her income ballooned from $63,224 in 1995 to $352,901 in 1999. Her income was $480,752 at the time of trial. The Wife maintained that she and the Husband did not lead an extravagant lifestyle, despite her obviously successful business. However, the parties' last marital standard of living included a $200,000 marital home, a $900,000 beach condominium, luxury automobiles, vacations or business trips throughout the world, a part-time housekeeper, thousands of dollars of jewelry purchased by the Wife, private schooling for their son, and the accumulation of approximately $40,000 in savings and securities.
In determining the amount of alimony, the trial court should ensure that each party's standard of living comes as close as possible to the prior lifestyle, given the available financial resources. Laz v. Laz, 727 So.2d 966, 967 (Fla. 2d DCA 1998). In Young v. Young, 677 So.2d 1301, 1306 (Fla. 5th DCA 1996), one spouse's income exceeded the other's by approximately eight times. The Fifth District held that the lesser-paid party was entitled to permanent alimony in an amount that would allow that party to live in a manner reasonably commensurate with the standard established during the marriage, despite the fact that the spouse was employed. Id.
Here, even if the Husband, in fact, earned the $40,000 per year the trial court imputed to him, the $3000 per month alimony would bring his income up to only $76,000, compared to the Wife's income of over $400,000. Considering all of the relevant factors, this level of disparity "is too great to be ignored" and constitutes error. Bradley v. Bradley, 385 So.2d 101, 103 (Fla. 5th DCA 1980); Laz, 727 So.2d at 967 (holding trial court's award of $7000 per month alimony was abuse of discretion where award was less than one-third of total available income); Atkins v. Atkins, 611 So.2d 570 (Fla. 1st DCA 1992); Pirino v. Pirino, 525 So.2d 1028 (Fla. 5th DCA 1988).
Following the redetermination of imputed income, we direct the trial court to reconsider the amount of permanent periodic alimony and to award such sum as is in keeping with the Husband's needs and the Wife's superior ability to pay. In all *390 other respects, the final judgment is affirmed.
FULMER, C.J., and CASANUEVA, J., concur.
NOTES
[1] The Husband argues on appeal that Dr. Martinez's prior testimony was admitted improperly into evidence, and that the trial court was precluded from relying on it as a basis for its decision. The Husband waived this argument; there was no objection at trial, and his counsel used the testimony in final argument.
[2] Dr. Martinez stated that the Husband chose not to have a recommended nerve block and surgery that reduces pain significantly in seventy-five percent of patients who undergo such surgery. The Husband was reluctant to have back surgery, but he planned to undergo surgery soon in an attempt to relieve his condition.