VILLANTI, Judge.
 

 In this dissolution of marriage action, Deborah Zinovoy challenges the adequacy of the amount of permanent alimony awarded to her and the trial court’s allocation of financial responsibility for unreim-bursed medical expenses related to the parties’ minor children. Finding merit in these arguments, we reverse and remand for reconsideration as directed below.
 

 We first address the trial court’s allocation of financial responsibility for unreimbursed medical expenses related to the parties’ children. The final judgment, inter alia, allocated child support responsibility 23.95% to the wife and 76.05% to the husband; required the husband to maintain medical insurance for the minor children and pay 100% of the premium; and required the parties to “share equal responsibility for, and ... pay 50% of, the minor children’s ... medical, dental, prescription drug, hospitalization, optometric, and orthodontia expenses not covered by insurance, together with all insurance deductibles.” The wife contends that the trial court’s 50/50 allocation of unreimbursed medical expenses was error because it conflicted with the final judgment’s child support allocation. This contention has merit.
 
 See
 
 § 61.30(8), Fla. Stat. (2009);
 
 Wilcox v. Munoz,
 
 35 So.3d 136, 141 (Fla. 2d DCA 2010) (“It is error for the court to equally divide the noncovered medical, dental, and prescription medication expenses when the court arrives at an unequal percentage share of child support.”). In other words, absent some logically established rationale in the final judgment to the contrary, collateral child support expenses must be allocated in the same per
 
 *765
 
 centage as the child support allocation. Because the final judgment on appeal contains no such rationale, we must reverse and remand this portion of the final judgment and direct the trial court to enter an amended final judgment consistent with controlling case law.
 

 The wife next argues that the trial court’s $6370 monthly alimony award was inadequate given the husband’s ability to pay, her undisputed financial needs, and the standard of living established during the marriage. On the record before us, we agree that the trial court erred in determining the amount of the alimony.
 

 At the time the dissolution petition was filed, the parties had been married sixteen years and four months.
 
 [1]
 
 Both parties were forty-eight years old. The husband earned significantly more than the wife. The trial court found that the husband’s monthly income was $38,707 and imputed monthly income to the wife of $1257. Inarguably, the evidence established that the parties enjoyed an affluent standard of living during the marriage. Without going into unnecessary detail, we note that their assets were valued at over $1 million, including the marital residence valued at over $500,000 and real property in Costa Rica. Their children attended private school, and the family took frequent expensive vacations.
 

 The wife’s amended financial affidavit showed monthly expenses of $17,715. After deducting $4445 in expenses related to the children, the wife claimed a monthly need of $13,270. The wife’s expert, a forensic accountant, reviewed the parties’ credit card statements and bank account transactions for the twelve months preceding the filing of the dissolution petition and prepared a “lifestyle analysis,” to which she testified at the final hearing. After taking into consideration the tax consequences of an alimony award, the wife’s expert testified that the wife’s monthly alimony should be $16,368. The great bulk of this testimony was unrefuted.
 

 On the other hand, the husband’s expert did not independently examine the parties’ books to determine their standard of living expenses, nor did he look at the wife’s final adjusted lifestyle analysis.
 
 [2]
 
 Rather, he and the husband simply sat down to review the wife’s preliminary lifestyle analysis calculation, the husband pointed to only ten items in the wife’s lifestyle calculation to which he felt an adjustment should be made, and his expert adopted those adjustments.
 
 [3]
 
 The expert then mathematically
 
 *766
 
 reduced the wife’s monthly need to $8370. However, on cross-examination the husband’s expert acknowledged errors in his analysis which resulted in incorrect deductions in some of the ten items that he had identified.
 
 [4]
 

 After hearing all of the evidence, the trial court found that the wife’s claimed needs were “vastly overstated” and awarded the wife $6370 in monthly pretax alimony. Based on the facts of this case, we conclude that the trial court abused its discretion in calculating the alimony award because it is inconsistent with, and significantly lower than, any of the trial testimony addressing the wife’s alimony need.
 

 First, we must recognize that a trial court has broad discretion in determining the amount of permanent alimony. “If a reviewing court finds that there is competent substantial evidence in the record to support a particular award,” the award will be affirmed.
 
 Marcoux v. Marcoux,
 
 464 So.2d 542, 544 (Fla.1985). Nevertheless, permanent periodic alimony is intended to allow the requesting spouse “to maintain the standard of living established by the parties during the marriage and to ensure that, viewing the totality of the circumstances, one spouse is not ‘shortchanged.’ ”
 
 Griffin v. Griffin,
 
 906 So.2d 386, 388 (Fla. 2d DCA 2005). In deciding the amount of alimony “the trial court should ensure that each party’s standard of living comes as close as possible to the prior lifestyle, given the available financial resources.”
 
 Id.
 
 at 389;
 
 Laz v. Laz,
 
 727 So.2d 966, 967 (Fla. 2d DCA 1998) (same).
 

 In
 
 Griffin,
 
 for example, the parties’ standard of living in a fourteen-year marriage included a $200,000 home, a $900,000 beach condo, luxury cars, luxurious vacations, a part-time housekeeper, thousands of dollars in jewelry, and private schooling for them son. 906 So.2d at 389. This court held that a $3000 monthly alimony award to the husband was insufficient, noting that the award brought the husband’s annual income to only $76,000, when the wife’s income was over $400,000.
 
 Id.
 
 “Considering all of the relevant factors, this level of disparity ‘[was] too great to be ignored’ and constituted error.”
 
 Id.
 

 Similarly, in
 
 Wright v. Wright,
 
 577 So.2d 1355, 1358 (Fla. 1st DCA 1991), the district court reversed a $2000 monthly permanent periodic alimony award where the husband’s annual income was more than $100,000 and the wife’s income was no more than $36,000. The court concluded that the amount of alimony was not commensurate with the husband’s ability to pay or with the standard of living established during the marriage and was insufficient to provide for the wife’s needs as established during the marriage.
 
 Id.
 
 The alimony amount left the wife “able to meet approximately half the expenses listed in her postseparation financial affidavit,” while the husband would “continue to enjoy a level of affluence which far exceeded] that enjoyed by his former spouse.”
 
 Id.
 
 The district court pointed out that after paying alimony, the husband had after-tax income of $80,000 to $91,000.
 
 Id.
 
 “There is, thus, a gross disparity in the parties’ earning capacities and standards of living, which is unreasonable under the facts.... ”
 
 Id.; Sinclair v. Sinclair,
 
 594
 
 *767
 
 So.2d 807, 809 (Fla. 3d DCA 1992) (finding alimony award inadequate where husband’s salary dwarfed wife’s salary, husband had ability to pay more, and amount of award unnecessarily confined the wife to a lifestyle far below the affluent standard enjoyed during the marriage).
 

 In this case, as in the cases cited above, viewing the totality of uncontested circumstances, the alimony award is not commensurate with the husband’s ability to pay or the wife’s need. As a result, the final judgment unnecessarily confines the wife to a lifestyle far below the standard of living established during the marriage, while it allows the husband to continue enjoying a level of affluence that far exceeds that of the wife. Specifically, the amount of alimony covers less than half of the undisputed expenses listed in the wife’s amended financial affidavit. Even after paying alimony, the husband will have monthly income of $32,337, compared with the wife’s monthly income of $7627 after receiving the alimony. Given the record before us, the income disparity in this case is far too great to be overlooked.
 

 In the final judgment, the trial court’s alimony award was preceded by a finding that the wife had “vastly overstated” her needs. The husband would have us affirm the final judgment based upon this finding, claiming that it is correct and that there was no abuse of discretion. The problem with this argument lies in the gross inconsistency between the evidence presented at trial and the trial court’s factual recitations in the final judgment. Thus, the “vastly overstated” label simply does not comport with the wife’s uncontested needs or with the husband’s ability to pay. Here is why.
 

 The trial court’s final judgment rejected the following items from the wife’s lifestyle analysis: (1) the wife’s “over $800 per month in cash need,” (2) her need of $2000 monthly for vacations, (3) $400 for scrap-booking, (4) $1000 for clothing, “and many other examples pointed out by the Husband’s experts and in cross examination of the Wife’s experts.” However, the court’s chosen examples are not supported by the record and we can find no other testimony to corroborate the trial court’s “catch all” finding of “many other examples.” For instance, contrary to the court’s findings, the wife did not actually request “over $800 per month in cash need” because that figure had already been allocated to other categories in her lifestyle analysis. The court also incorrectly stated that the wife claimed $1000 monthly for clothing, when the wife actually stated that her clothing need was $800. As for the scrapbooking expense, the husband did not challenge that monthly expense. Thus, the trial court was not free to impose its own apparent disbelief of this expense because it was supported by the parties’ unrefuted standard of living evidence. We also note that even the husband’s expert calculated the wife’s need as $8370 monthly, and the husband’s own financial affidavit calculated his monthly need as $9810 after deducting expenses related to the parties’ children. Thus, given the record before us, we cannot discern any validity to the trial court’s conclusion that the wife overstated her needs to the point that she only needed $6370 in monthly alimony.
 
 See generally Valentine v. Van Sickle,
 
 42 So.3d 267, 272 (Fla. 2d DCA 2010) (reversing alimony award where trial court failed to explain how it came to certain conclusions regarding alimony; the lack of an explanation “confound[ed] meaningful appellate review of the alimony award”);
 
 Kelley v. Kelley,
 
 967 So.2d 924, 925-26 (Fla. 2d DCA 2006) (noting that the trial court had concluded that the wife’s expenses were inflated, but it had not indicated “what amounts were appropriate based upon the evidence presented”).
 

 
 *768
 
 Although a trial court can find that a party’s estimate of expenses is inflated, the record evidence must support that finding.
 
 See, e.g., Schwab v. Schwab,
 
 864 So.2d 82, 84 (Fla. 1st DCA 2003) (“[T]he wife’s financial affidavit includes several expenses that appear inflated.... There is no competent, substantial record evidence to establish that these amounts were derived from the standard of living shared by the parties-”);
 
 Atkins v. Atkins,
 
 611 So.2d 570, 572 (Fla. 1st DCA 1992) (“[T]he trial court found that ‘the Wife’s financial affidavit is significantly inflated’ ..., and there is ample evidence to support such a finding.”). It is the function of the appellate court to determine whether the trial court’s judgment is supported by competent evidence, and when the trial court’s factual findings do not substantially comport with undisputed evidence in critical areas a per se abuse of discretion has occurred.
 
 See Shaw v. Shaw,
 
 334 So.2d 13, 16 (Fla.1976). Hence, we must reject the husband’s contention that the trial court acted reasonably in exercising its discretion because its judgment was based upon erroneously recounted critical facts.
 

 On remand, while we cannot instruct the trial court as to the exact alimony amount to award, we can safely say based on the record that the monthly alimony amount should be no lower than the amount to which the husband’s expert testified and no higher than the amount which the wife requested. Due to the passage of time, the parties may present additional testimony and argument to assist the trial court in making a proper determination. Accordingly, we reverse and remand for reconsideration of the amount of alimony to be awarded to the wife.
 

 Reversed and remanded for further proceedings consistent with this opinion. In all other respects the final judgment of dissolution of marriage is affirmed.
 

 KHOUZAM and CRENSHAW, JJ., Concur.
 

 [1]
 

 . The husband does not dispute that this was regarded by the parties as a relatively long-term marriage and that the wife is entitled to permanent periodic alimony; only the amount is in controversy. The final judgment of dissolution was rendered on July 9, 2009, before the amendment to section 61.08(4), Florida Statutes (2010). Effective July 1, 2010, section 61.08(4) creates a rebuttable presumption that a long-term marriage is one "having a duration of 17 years or greater.” However, even had this amendment applied to this case, we seriously doubt the outcome would have been affected.
 

 [2]
 

 . The wife’s expert had prepared an initial lifestyle analysis and a subsequent adjusted lifestyle analysis. The husband’s expert apparently had not reviewed the wife’s final adjusted lifestyle analysis, relying instead on a preliminary version of the document.
 

 [3]
 

 . The wife’s lifestyle calculation contained roughly sixty items or expense areas. The expenses to which the husband made adjustments were: (1) water, garbage, and sewer (the expert reduced this expense by $65); (2) home repairs (reduced by $179); (3) food and home supplies (reduced by $826); (4) meals outside the home (reduced by $364); (5) gasoline and oil (reduced by $100); (6) medical, dental, and prescription costs (reduced by $287); (7) psychiatric and psychological expenses (reduced by $264); (8) vacations (reduced by $1500); (9) religious organizations
 
 *766
 
 (reduced by $125); and (10) cash (reduced by $629).
 

 [4]
 

 . For example, the expert acknowledged that he had deducted 20% too much from the food and home supplies and vacation categories because he made a deduction for the husband’s expenses when the wife’s expert had already made that deduction. Likewise, the expert deducted too much in the "cash” category because the wife's expert had already made deductions.