On Motion for Rehearing and/or Clarification

ROTHENBERG, J.
We grant appellee/cross-appellant’s motion for rehearing, withdraw our opinion filed on January 18, 2012, and substitute the following opinion in its stead.
Ava G. Byrne (“Ava”) appeals from a final judgment of dissolution of marriage and order denying her post-trial motions. Daniel R. Byrne (“Dan”) cross-appeals. Both parties challenge specific aspects of the trial court’s equitable distribution and award of permanent alimony. We reverse and remand for proceedings consistent with this opinion.

EQUITABLE DISTRIBUTION

The trial court erred by distributing the entirety of the negative value of the marital residence solely to Ava.
Ava and Dan purchased a condominium which is now underwater by approximately $76,000.[1] The trial court classified the condominium as marital property. In its equitable distribution, the trial court assigned the marital residence and the negative value associated with it entirely to Ava, and awarded Dan half of the remaining valuable marital assets. Ava argues that by assigning to her the entirety of the condominium’s negative value without offsetting it in the remainder of the equitable distribution, the trial court fashioned an unequal distribution without sufficient legal justification. We agree.
Section 61.075(1), Florida Statutes (2010), states, in pertinent part: “[I]n distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors.... ” Any justification for fashioning an unequal distribution must be “legally sufficient.” Foley v. Foley, 19 So.3d 1031, 1032 (Fla. 5th DCA 2009). Relying on the “equity” factor articulated in section 61.075(l)(j), the trial court justified its decision not to assign half of the condominium’s debt to Dan by stating that, although Ava wished to preserve her reputation by preventing foreclosure, “most homeowners in the circumstances of the parties would simply abandon the residence and/or return the keys to the banks holding the indebtedness.” The trial court therefore concluded that it would be inequitable to require Dan to pay half of the condominium’s negative value solely because Ava desired to protect her own reputation.
The trial court’s justification was not “legally sufficient” because it errone *5 ously assumed that the negative value associated with the condominium would simply vanish if the parties were to “abandon the residence” or “return the keys to the banks holding the indebtedness.” It is well settled Florida law that, absent contractual agreement, debtors remain liable for the portion of their debt not satisfied in a foreclosure sale. See Webber v. Blanc, 39 Fla. 224, 22 So. 655, 656 (1897) (“The fact that a mortgage was taken to secure the note did not deprive the holder thereof of the legal remedy to collect it, nor is there any legal obstacle in the way of his suing at law for the balance due on the note after the sale under the foreclosure decree in equity, if no judgment for the deficiency was entered in such proceedings.”); see also Clements v. Leonard, 70 So.2d 840, 844 (Fla.1954). Consequently, even if Ava and Dan agreed to surrender the property to the bank, absent a contractual release, the $76,000 outstanding debt on the property would survive. Thus, the sole justification provided by the trial court in fashioning an unequal distribution was without merit, and, consequently, the trial court erred in failing to add the condominium’s negative value to the marital liabilities.

ALIMONY

We next turn to the trial court’s alimony award. The trial court awarded Dan $1,500 per month as permanent periodic alimony based on the following factors: Dan and Ava’s marriage lasted “nine” years, and therefore was of moderate duration; Dan became disabled from working during the course of the marriage; Ava earns approximately “$10,000” per month; and Dan, based on his Sprint and Social Security disability income, earns approximately $44,000 per year, and does not have sufficient money to pay for his living or medical expenses. The trial court, in its order regarding Ava’s post-trial motions, awarded Dan an additional $18,000 in retroactive alimony. Ava challenges various aspects of the trial court’s alimony award on the basis of section 61.08, Florida Statutes (2010), which governs alimony awards.
We reverse the trial court’s award of $1,500 per month in permanent periodic alimony, and $18,000 in retroactive alimony, as we conclude that the trial court’s financial analysis was tainted by its failure to properly consider all of the relevant factors pursuant to section 61.08. Specifically, the trial court did not properly consider: each spouse’s pre-dissolution debts; the income Dan receives from his Fidelity Magellan Retirement account; and the $7,000 reduction to Ava’s annual salary.
Section 61.08(2) provides:
2) In determining whether to award alimony or maintenance, the court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance. If the court finds that a party has a need for alimony or maintenance and that the other party has the ability to pay alimony or maintenance, then in determining the proper type and amount of alimony or maintenance, the court shall consider all relevant factors, including, but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, including the nonmarital and the marital assets and liabilities distributed to each.
(e) The earning capacities, educational levels, vocational skills, and employa-bility of the parties and, when applica *6 ble, the time necessary for either party to acquire sufficient education or training to enable such party to .find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) The responsibilities each party will have with regard to any minor children they have in common.
(h) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a nontaxable, nondeductible payment.
(i) All sources of income available to either party, including income available to either party through investments of any asset held by that party.
(j) Any other factor necessary to do equity and justice between the parties.
Failure to consider each spouse’s pre-dissolution debts.
Section 61.08(2)(d) provides that in determining the proper type and amount of alimony, a trial court “shall” consider, among other things, “the financial resources of each party, including the non-marital and marital assets and liabilities distributed to each.” Despite this provision’s clear mandate, the trial court did not make ány findings regarding Ava’s or Dan’s pre-dissolution liabilities, and, therefore, erred. We note that, based ón a review of the record, Ava’s total debt was approximately $54,076, which she was paying off at a rate of $2,233 per month, while Dan’s total debt was approximately $39,319, which he was paying off at a rate of $1,203 per month.
Failure to consider the income Dan receives from his Fidelity Magellan Retirement account.
The trial court additionally erred in failing to consider Dan’s Fidelity Magellan Retirement account, a non-marital asset valued at $65,000, but encumbered by a $36,553 loan. Dan’s Fidelity Magellan Retirement account was a “financial resource” meant to be drawn on during retirement. The trial court, therefore, erred in determining that Dan’s only income was the $44,000 per year he received from Sprint and Social Security Disability payments, and this error necessarily affected the trial court’s determination regarding whether Dan had a “need” for alimony.
Failure to reopen the evidence to consider a $7,000 salary reduction in Ava’s salary.
Ava contends that the trial court erred in denying her unopposed motion to reopen the evidence to take into consideration a $7,000 reduction in salary that she incurred after the close of evidence but prior to dissolution. We agree. To begin with, we note that the trial court based its initial alimony calculations on the premise that Ava earned “$10,000” per month. As shown in Ava’s financial affidavit, however, she earned only $9,059 per month. The trial court recognized its error, and, in its order on Ava’s post-trial motions, noted that she earned “$9,000 instead of $10,000” per month.
Ava’s annual salary was subsequently reduced on July 27, 2010 by $7,000, and the trial court entered its final judgment of dissolution of marriage on August 11, 2010. On August 23, 2010, Ava, pursuant to Florida Rule of Civil Procedure 1.530(a), filed a motion to reopen the proceedings to consider the reduction in her salary, arguing that her post-trial salary reduction directly *7 impacts her ability to pay the trial court’s permanent alimony award.
Florida Rule of Civil Procedure 1.530(a) enables a trial court to evaluate matters that it did not consider prior to judgment, and to correct any error if the trial court becomes convinced that it has erred. Car-olio v. Carollo, 920 So.2d 16, 20 (Fla. 3d DCA 2005). Although rule 1.530(a) is permissive, the statute governing alimony awards, section 61.08(2), contains various mandatory considerations a trial court must make when awarding alimony.
“In determining whether to award alimony ..., the trial court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance.” § 61.08 (emphasis added). Ava’s substantial salary reduction, when viewed in conjunction with the marital debt for which she is responsible, is indispensible to the trial court’s determination of whether she has the ability to pay alimony.
Although we reverse the trial court’s award of $1,500 a month in permanent periodic alimony and $18,000 in retroactive alimony based on the trial court’s flawed financial analysis, we briefly address the principles that must be applied when considering whether permanent periodic alimony is appropriate, and if so, in what amount.
We recognize that “the nature and amount of an award of alimony is a matter committed to the sound discretion of the trial court.” Lule v. Lule, 60 So.3d 567, 569 (Fla. 4th DCA 2011) (quoting Mondel-lo v. Torres, 47 So.3d 389, 396 (Fla. 4th DCA 2010)). However, the trial court’s discretion is circumscribed by the parameters set forth in section 61.08(8). Section 61.08(8) provides that, “[pjermanent alimony may be awarded following a marriage of ... moderate duration if such an award is appropriate upon consideration of the factors set forth in subsection (2).... ” It follows that, to properly exercise its discretion in awarding alimony, the trial court must accurately consider all of the evidence relevant to the factors set forth in subsection (2). We note that while factors (c) and (e) of subsection (2) unequivocally lend some support to Dan’s award of permanent alimony, they are the only factors that do so. More importantly, as has been established above, the trial court did not properly consider all of the financial evidence relevant to the factors set forth in subsection (2).
In determining the proper amount of alimony to award, “the court shall consider all relevant factors, including, but not limited to: [t]he standard of living established during the marriage[,] ... the financial resources of each party[,] ... the earning capacities ... of the parties[,] and all sources of income available to either party ....” § 61.08(2) (emphasis added). The trial court’s failure to consider Ava’s reduction in salary caused the trial court to award an excessive amount of alimony.
Generally, the rubric for determining the amount of an alimony award is the standard of living established during the marriage. Griffin v. Griffin, 906 So.2d 386, 389 (Fla. 2d DCA 2005) (“In determining the amount of alimony, the trial court should ensure that each party’s standard of living comes as close as possible to the prior lifestyle, given the available financial resources.”) (quoting Laz v. Laz, 727 So.2d 966, 967 (Fla. 2d DCA 1998)). However, it is well settled that a spouse “cannot be required to maintain the [other spouse’s] standard of living when this maintenance stretches beyond his [or her] financial capacity.” Pirino v. Pirino, 549 So.2d 219, 220 (Fla. 5th DCA 1989).
*8 In this case, the trial court based its decision to award $1,500 per month in permanent alimony, in part, on its determination that Dan and Ava enjoyed a “comfortable” [2] standard of living. A careful analysis of the record, however, reveals that, without the alimony award, Ava’s reasonable expenses exceed her income while Dan’s reasonable expenses only slightly exceed his income. Thus, it is clear that the award stretches beyond Ava’s financial capacity.
The trial court erred in retroactively increasing the alimony award by $18,000.
We also conclude that the trial court erred by awarding Dan an additional $18,000 in alimony based on the worthlessness of the TD Ameritrade account.
The trial court, in its order on Ava’s post-trial motions, found that since Dan:
is receiving his Ameritrade account at a value of $50,467.00 when in fact at the time of distribution this account is worth zero dollars or thereabout the court must adjust its alimony finding. The court will make its award of alimony retroactive to the July 2009 separation and debit the Wife an additional $18,000 in alimony.
In adjusting its award in this way, the trial court essentially penalized Ava for Dan’s unauthorized expenditure of her marital portion of the TD Ameritrade account by using the account’s lack of value as a justification for retroactively increasing Dan’s alimony award by $18,000. This was error.

CONCLUSION

In sum, the trial court’s sole justification for assigning the entirety of the negative value of the marital home to Ava, and thereby creating an unequal distribution, was not legally sufficient. Moreover, the trial court’s failure to properly consider each party’s liabilities, debts, and sources of income, including Ava’s reduction in salary and Dan’s Fidelity Magellan Retirement account, distorted the trial court’s view of the comparative financial position of each party in favor of Dan and to the detriment of Ava. Finally, the trial court erred in retroactively increasing the alimony award by $18,000 based on the TD Ameritrade account’s worthlessness.
Upon remand, the trial court is directed to re-evaluate Dan’s need for alimony, Ava’s ability to pay, and all of the relevant factors articulated in section 61.08(8), including the standard of living established during the marriage, the length of this second marriage (less than nine years), and Dan’s minimal contribution to the marriage, in determining whether permanent alimony is appropriate, and if so, in what amount.
Reversed and remanded.

. The deed and note were titled solely in Ava's name due to Dan's ongoing litigation with his ex-wife at the time of purchase.

. We note that the foundation of Ava and Dan’s arguably ''comfortable” lifestyle was a large sum of debt.