867 So.2d 471 (2004)
Michael Nasser KARIMI, Appellant/Cross-Appellee,
v.
Joanne May KARIMI, Appellee/Cross-Appellant.
No. 5D02-3004.
District Court of Appeal of Florida, Fifth District.
February 13, 2004.
Rehearing Denied March 17, 2004.
*473 Norman D. Levin and Richard Trionfo of Norman D. Levin, P.A., Longwood, for Appellant/Cross-Appellee.
Michael J. Maloney of Michael J. Maloney, P.A., Orlando, for Appellee/Cross-Appellant.
Joanne M. Karimi, Lake Mary, Pro Se.
MONACO, J.
This is an appeal from an amended final judgment of dissolution that terminated a twenty-three-year marriage between the parties, and resolved financial and property issues, as well as support and custody issues concerning the three minor children of the parties. The case also involves an appeal from an order of the trial court denying the motion of the Former Husband, Michael Nasser Karimi, for a rehearing, and a cross-appeal of the Former Wife, Joanne May Karimi, with respect to life insurance matters. While we generally agree with the disposition made by the trial court, there are two issues that we have concluded are in need of further consideration by it.
After the Former Wife petitioned for dissolution of marriage, the Former Husband answered and counter-petitioned, and the case proceeded to a three day trial. Prior to trial the parties stipulated that the Former Wife would be the primary residential parent and that the Former Husband would be the secondary residential parent of their children. The stipulation also resolved certain issues involving shared parenting and visitation. Motions for rehearing were filed by both parties, resulting in a minor change in the judgment requested by the Former Wife, and a denial of the changes requested by the Former Husband.
I. Child Support Issues.
Perhaps the most important issues raised by this appeal concern child support. The standard of review for each of these issues is one of abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
When the Former Wife filed her petition for dissolution of marriage, the Former Husband was a stay-at-home father, who was taking care of one of the children, and earning some funds as a day trader. He later became employed and at the time of the trial of this matter the Former Husband indicated on his financial affidavit that he was earning $95,000 per year. The Former Wife indicated on her affidavit that her annual income was $109,000. As child care costs were high, the court ordered the Former Husband to pay $1,906.53 per month for child support, which included $1,450 per month for the cost of child care. Unfortunately, the amended final judgment does not indicate how the trial court arrived at this number. The Former Husband thus argues that the trial court's findings relative to child support are not supported by substantial competent evidence and amount to an abuse of discretion.
The child care cost matrix testified to by the parties in excruciating particularity in this case is quite complex, and it would serve little purpose to recite in detail the evidence adduced concerning the expense of finding and utilizing nannies, preschools, day care facilities and summer camps. Our difficulty with the amount of child support ordered by the trial court to be paid by the Former Husband arises from the fact that the amended final judgment makes insufficient findings to allow us to review this issue in a meaningful way. See Layeni v. Layeni, 843 So.2d 295, 300 (Fla. 5th DCA 2003); Mannix v. Mannix, 763 So.2d 1135 (Fla. 4th DCA 1999). *474 The amount of support ordered by the trial court might be perfectly reasonable under the circumstances. The problem is that neither this court, nor either party could determine or explain the methodology used by the trial court in arriving at the number. On remand, therefore, the trial court shall make such specific findings as are appropriate to indicate how the court arrived at the amount of child support to be paid by the Former Husband.[1]
The Former Husband also asserts that he was involuntarily terminated from his employment after the conclusion of the trial and after the entry of the final judgment. His motion for rehearing in this regard was denied without a hearing, apparently on the theory that his termination should be considered on a motion to modify child support based on a change of circumstances, rather than on rehearing. While the trial court could certainly have granted a rehearing on this issue, see Perez v. Perez, 687 So.2d 1359 (Fla. 3d DCA 1997), we do not necessarily disagree with the posture of the trial court in this particular case, but suggest that in view of the protracted history of this litigation, and the requirement that child support be revisited as a result of this appeal, the time might be propitious for the trial court to consider the issue raised by the motion for rehearing, as well.
The last issue raised by the Former Husband in connection with child support is whether the trial court erred in failing to deviate from the child support guidelines in view of the fact that the minor children will spend what is stipulated to be a "significant" amount of time with the Former Husband. Section 61.30(11)(b), Florida Statutes (2002), indicates that if a shared parental arrangement provides that each child spend a "substantial" amount of time with each parent, "the court shall adjust any award of child support" in a manner specifically provided by the statute. Subsection 10 of the statute then defines "substantial amount of time" during which the noncustodial parent exercises visitation as "at least 40 percent of the overnights of the year."
Apparently, the Karimi children will spend about 33% of the overnights with the Former Husband. He argues that the trial court abused its discretion in not adjusting his child support in view of section 61.30(11)(a)10, Florida Statutes (2002). That statute reads as follows:
The Court may adjust the minimum child support award, or either or both parents' share of the minimum child support award, based upon the following considerations:
* * *
10. The particular shared parental arrangement, such as where the child spends a significant amount of time, but less than 40% of the overnights, with the noncustodial parent, thereby reducing the financial expenditures incurred by the primary residential parent; or the refusal of the noncustodial parent to become involved in the activities of the child. (Emphasis added).
We disagree with the Former Husband. From the unambiguous wording of section 61.30(11)(a)10 it is clear that the legislature intended this potential adjustment to be within the sound discretion of the trial court. It would otherwise not have said that the court "may" make an adjustment if the child spends a "significant" number *475 of overnights with the noncustodial parent, but "shall" make an adjustment if the child spends 40% or more of his or her overnights with the noncustodial parent. The legislature has simply provided another discretionary tool to be used by the trial court to arrive at fairness in the terribly complex arena of child custody and support. Moreover, there is no indication in the legislation that some sort of sliding scale was intended based on the number of overnights a minor child might spend with a noncustodial parent. Instead, whether or not to adjust is subject to an abuse of discretion standard, and we cannot say based on the particular facts of this case that any abuse in this regard has been demonstrated.
II. Equitable Distribution.
The primary issue requiring our attention in connection with the equitable distribution of the property of the parties ordered by the trial judge concerns an asset the parties describe as the Datek account. The record indicates that the Datek account was essentially a checking account that the Former Husband used for day trading prior to the separation of the parties. When the petition for dissolution was filed the account contained about $7,000. When the final judgment was rendered, it contained nothing.
The uncontradicted testimony was that the funds were used to support the Former Husband and his son at the initiation of the proceedings, as he was not working at the time and was residing in the marital home. The Former Husband also testified that during this time he had to borrow money from his family and friends in order to meet his financial obligations. The trial court nevertheless allocated all of this completely depleted asset to the Husband. We conclude that to do so constituted an abuse of discretion.
Unquestionably, if marital misconduct results in the depletion or dissipation of a marital asset, a trial court may make an unequal distribution of marital property, or may assign the asset to the dissipating spouse as part of that spouse's equitable distribution. See Bush v. Bush, 824 So.2d 293 (Fla. 4th DCA 2002); Romano v. Romano, 632 So.2d 207 (Fla. 4th DCA 1994). Where the asset is used by one of the parties out of necessity for reasonable living expenses, however, that asset should not be assigned to the party who used them, absent a finding of misconduct. See Cooper v. Cooper, 639 So.2d 153 (Fla. 2d DCA 1994); Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA 1993); Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA), review denied, 592 So.2d 679 (Fla.1991). As there was no finding of misconduct on the part of the Former Husband with respect to the Datek account, and as there was no evidence contradicting the testimony regarding his use of the funds, the account should not have been assigned to him for equitable distribution purposes. The trial court shall revisit the equitable distribution of the marital assets in light of this conclusion.
The only other equitable distribution issue that requires our attention involves the method used by the trial court to distribute the remaining smaller items of the marital estate. The method chosen by the court appears to be authorized by our decision in Gardner v. Gardner, 452 So.2d 981 (Fla. 5th DCA 1984), and we see no good reason to disturb it.
III. Conclusions.
While the parties raise a number of other issues for our consideration, we have concluded that the trial court did not abuse its discretion with respect to them, and that no useful purpose would be served by our further discussion of them. Accordingly, *476 we reverse with respect to the child support amount and remand this issue to the trial court for further proceedings, if necessary or appropriate, and for specific findings such that we can meaningfully review the amount ordered. We also reverse that part of the order assigning the Datek account to the Former Husband in connection with the equitable distribution of the marital property of the parties. In all other respects we affirm.
REVERSED in part, AFFIRMED in part, REMANDED.
SHARP, W., and GRIFFIN, JJ., concur.
NOTES
[1] For the guidance of the trial court we note that we find no abuse of discretion in the factual finding that the costs of a nanny are reasonable and necessary in this case, and should be included in the calculation of child support.