ORFINGER, J.
 

 Nouredine Chehab, the former husband, raises multiple challenges to the court’s equitable distribution of the marital assets set forth in the second amended final judgment of dissolution of marriage. Ann Hamilton-Chehab, the former wife, cross-appeals. We affirm in part and reverse in part.
 

 During the marriage, the former wife was employed as a vice-president of resort sales for Walt Disney Company. In addition to her monthly salary and discretionary cash bonuses, she received Disney stock options and restricted shares of stock beginning in 1997, which vest and expire at different times until 2013. The former wife redeemed some of her Disney stock on May 9, 2006, a month before the dissolution petition was filed, receiving $6,481.58 in net proceeds. The treatment of these items in the trial court’s equitable distribution plan is the primary matter that we must address in this appeal.
 

 The former husband contends that while the trial court correctly found that all of the former wife’s compensation from Disney prior to June 2, 2006, the filing date, in the form of stock options and restricted shares, both vested and unvested, is marital property, the court erred in its valuation and distribution of this property. The parties acknowledged below that the proper analysis of the vesting ratios is set out in
 
 Parry v. Parry,
 
 933 So.2d 9 (Fla. 2d DCA 2006), but disagree as to the proper application of
 
 Parry
 
 to this case. Rulings regarding equitable distribution are subject to an abuse of discretion standard of review.
 
 Hollister v. Hollister,
 
 965 So.2d 341, 343-44 (Fla. 2d DCA 2007).
 

 The unvested options and restricted shares were, in part, the product of marital labor. Consequently, the marital portion was properly deemed to be a marital asset pursuant to section 61.075(6)(a)l., Florida Statutes (2009), which defines “marital assets” to include assets acquired during the marriage.
 
 See Parry,
 
 933 So.2d at 13 (“[A]n award that is in the nature of deferred compensation and that is granted during the marriage is usually a marital asset because it is compensation for past marital labor.”). However, the proper methodology for valuing and distributing this property is not as straightforward.
 

 In addressing the proper methodology for allocating options earned before the applicable cutoff date of identifying and valuing unvested assets, the second district court in
 
 Parry
 
 adopted a “time rule” method, which is substantially the same as the “coverture fraction” method that Florida courts use to value future pension benefits. 933 So.2d at 14 (citing
 
 Trant v. Trant,
 
 545 So.2d 428, 429 (Fla. 2d DCA 1989)). Essentially, to value future pension benefits under the coverture fraction method, the fraction consists of a numerator that is “the amount of time the employee was married while participating in the plan, and the denominator is the total time the employee has in the plan.”
 
 Trant,
 
 545 So.2d at 429. The fraction is then multiplied by the present value of the pension with the result representing the marital portion to be equitably distributed.
 
 Id.
 
 In applying this method to valuing un-vested assets such as the options and restricted stock in this case, the
 
 Parry
 
 court described the calculation as follows:
 

 
 *536
 
 [T]he numerator should represent the number of months in which marital labor was devoted to earning the award. Here, the numerator would be the number of months between the grant date and the petition filing date. This number will vary because the awards were granted on different dates.... The denominator would be the total number of months in which the award was to be earned. Because all of the restricted stock awards at issue have a four-year vesting period, as to those the denominator will always be 48. Determining the denominator for the option grants is less straightforward, because one-quarter of the shares in each option vests every twelve months. Therefore, each grant would entail denominators of 12, 24, 36, and 48, each of which would apply to one-quarter of the shares in the option.
 

 933 So.2d at 14.
 

 In this case, the court determined that the former wife’s stock options that were awarded prior to 2003 were 100% vested, while those awarded in 2003, 2004, 2005 and 2006 were assigned a denominator of 48 (months) based on the evidence that beginning in 2004, the options vested 25% per year for a four-year vesting cycle commencing on the grant dates.
 
 [1]
 
 The numerator reflected the months between the issuance date of the options and June 2, 2006, the date that the petition for dissolution was filed. The court assigned a vesting ratio of 42/48 for options granted on January 24, 2003, a ratio of 30/48 for options granted on January 22, 2004, a ratio of 18/48 for options granted on January 3, 2005, and a ratio of 5/48 for options granted on January 9, 2006. The restricted shares were likewise assigned a denominator of 48 (months) based on vesting at 50% every two years for a total vesting period of four years. Again, the numerator was the difference between the issuance date and the date that the petition for dissolution was filed.
 

 The former husband correctly argues that as to the restricted shares, the denominator should be 24 and 48 months, since vesting was to occur 50% every two years.
 
 See Parry,
 
 933 So.2d 9. The same appears true for the vesting of the stock options. A portion of the options vested each year over a four- or five-year period, and the denominators should reflect these periods.
 
 [2]
 
 On remand, these calculations must be corrected.
 

 We also agree that the trial court erred in failing to treat the 221 shares of Disney stock, which the former wife sold on May 9, 2006, netting $6,481.58, as a martial asset subject to equitable distribution.
 
 See
 
 § 61.075(6)(a), Fla. Stat. (2009). On remand, this asset should be equitably distributed.
 

 In addition, we agree that the court did not make sufficient findings in support of its distribution of the parties’ brokerage account. The former husband’s financial affidavit reflected “Stocks/Bonds” valued at $36,700. At trial, the former husband testified that he and the former wife had a
 
 *537
 
 joint Ameriprise account, but was unable to testify as to the balance in the account. The most recent Ameriprise statement in the record reveals that as of June 30, 2006, the money market balance was $38,060.81, and with securities added, totaled $90,491.64 in value. The former husband testified “there’s one more joint account. It’s this cash management account.” The former wife conceded below that in January 2007 she took $26,700 from the Ameri-prise account and deposited the money in her Morgan Stanley account.
 

 On this issue, the trial court found:
 

 38. The $26,700 the Wife received from the Ameriprise account is distributed to her and the $26,127 the Husband received from the same account is distributed to him.
 

 39. The Husband says the $36,700 which the court found he had received from his marital stock and bond accounts was the same money referenced in paragraph 38 above. After reviewing its trial notes and the exhibits the court was unable to verify his contention and therefore, has left this part of the judgment unchanged. The $37,600 is distributed to him.
 

 The record supports the finding that the former wife received $26,700 from the Am-eriprise account. Beyond that however, it is unclear whether and how much the former husband received from the account. The couit did not expressly value the Am-eriprise account nor did it designate the source(s) of the $36,700 that it attributed to the former husband. On remand, the court should make findings as to these accounts.
 

 The former husband also argues that the court erred in failing to take into account several credit cards, constituting marital debt. The former husband points to two Chase accounts totaling $26,490 and a Bank of America debt of $9,600. As to the Chase accounts, the court found that $5,704 of this balance was marital debt, which would be distributed to the former husband. However, the former husband had incurred additional, substantial sums post-separation, and thus, these sums were not marital debt. We see no error in that determination. However, the court did not address the Bank of America debt, which must be resolved on remand.
 

 Finally, we find no reversible error as to the two points raised on cross-appeal. Accordingly, we affirm the second amended final judgment of dissolution except as previously discussed. The calculation of the marital portion of the former wife’s options and restricted stock grants should be revised to utilize denominators on the un-vested options and restricted shares of stock, which more precisely reflect the periodic vesting of such assets. Additionally, the court should determine the source of the $36,700 that it attributed to the former husband or delete it from the former husband’s asset column and if necessary, readdress the distribution of the Ameriprise account. Lastly, the court should address disposition of the $9,600 Bank of America debt. In connection with these actions, the court may revisit the equitable distribution scheme if a revision becomes necessary.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 PALMER and JACOBUS, JJ., concur.
 

 [1]
 

 . The 2003 options vested at 20% over a five-year period.
 

 [2]
 

 . The restricted stock vested at 50% of the shares at year two and the remaining 50% at year four. Denominators of 24 and 48 should have been utilized. The numerator would be the number of months between the grant date and the petition filing date. Since a portion of the stock options vested each year, the vesting ratio for the 2003 options should be 42/60, while the remaining options should be assigned denominators of 12, 24 and 36 since the evidence established that in 2004, 2005, and 2006, the options vested 25% per year over a four-year vesting cycle, commencing on the grant dates.