LAMBERT, J.
Raymond Mattison ("Former Husband") appeals the amended final judgment dissolving his marriage with Christine Mattison ("Former Wife"). Former Husband raises several claims of error, primarily related to child support and the equitable distribution of marital assets. Because we agree with the majority of his arguments, we reverse and remand for further proceedings.
*260 CHILD SUPPORT -
The parties have two minor children resulting from their relatively short marriage.[1] The parties reached a 50/50 timesharing agreement regarding their children that was incorporated into the amended final judgment. The court ordered Former Wife to pay to Former Husband child support in the sum of $ 63.71 per month based upon its findings that Former Wife's "annual income for child support purposes is $ 107,761.08" and that "[Former] Husband's income is $ 86,400." The court also found that Former Wife owed Former Husband retroactive child support for the period from separation until the final judgment in the amount of $ 9130.80, to be repaid at the rate of $ 50 per month until paid in full. Lastly, the court ordered that the minor children's medical expenses that were not covered by insurance would be equally split by the parties. Former Husband challenges each of these rulings.
The undisputed evidence at trial is that in January 2017, during the pendency of the litigation, Former Husband was involuntarily laid off from his employment with Bank of America. Approximately two months later, and shortly before trial, Former Husband formed a medical underwriting company at which he employed two other individuals. The trial court found that Former Husband's new company was awaiting payment from a client on a $ 7200 invoice that the court concluded took approximately one month of work to generate. The court then extrapolated from these facts to find that Former Husband's annual income for purposes of computing child support was $ 86,400 ($ 7200 per month multiplied by twelve months). Former Husband contends that this ruling is erroneous as a matter of law. We agree.
Section 61.30, Florida Statutes (2017), sets forth the child support guidelines to be applied in Florida and the manner in which the court is to determine the parties' respective net incomes for purposes of computing the child support obligations. See § 61.30(2) - (4), Fla. Stat. Specifically, section 61.30(2)(a) 3. provides that a party's gross income shall include "[b]usiness income from sources such as self-employment, partnership, close corporations, and independent contracts" with business income being defined as "gross receipts minus ordinary and necessary expenses required to produce income." The trial court erred here when it determined Former Husband's income for child support purposes to be his anticipated gross income from self-employment without factoring in the ordinary and necessary expenses that Former Husband incurs to produce this income. On remand, the court is directed to recalculate the parties' child support obligation. The trial court, in its discretion, may receive additional evidence to assist it regarding the calculations described herein.
Because the child support arrearages total was based, in part, upon an incorrect figure used by the court for Former Husband's income from the time he was laid off from his previous employer until trial, the amount of the child support arrearages will have to be recalculated. To facilitate the trial court's determination of the arrearages, we address three other errors regarding the arrearages that should be corrected on remand. First, the court erred in not awarding prejudgment interest on the arrearages. See Burkley v. Burkley , 911 So.2d 262, 271 (Fla. 5th DCA 2005) ("Courts must award prejudgment interest on arrearages found to be due in *261 the final judgment."). Second, the court failed to award post-judgment interest on the arrearage judgment itself. See Vitt v. Rodriguez , 960 So.2d 47, 48 (Fla. 5th DCA 2007). Third, in light of Former Wife's income and the interest on the arrearage balance now to be included on remand, the repayment of arrearages at the rate of $ 50 per month must also be revisited. The present $ 50 per month arrearage payment (computing to $ 600 per year) will barely pay the annual interest accruing on the present arrearage balance. See Lamar v. Lamar , 889 So.2d 983, 984 (Fla. 4th DCA 2004) ("[A] plan for purging child support arrearages 'which postpones repayment of support until the object of such support reaches legal age or becomes self-supporting flies in the face of the very reasons for which "child support" exists.' " (quoting Leone v. Weed , 474 So.2d 401, 404 (Fla. 4th DCA 1985) ) ). On remand, the trial court should set a monthly arrearage payment that is both consistent with Former Wife's ability to pay and satisfies the arrearages in a more expeditious fashion.
The court also erred in allocating the children's uncovered medical expenses equally. Presently, the monthly child support obligation of the parties is allocated 53.27% to Former Wife and 46.73% to Former Husband. "[A]bsent some logically established rationale in the final judgment to the contrary, collateral child support expenses must be allocated in the same percentage as the child support allocation." Julia v. Julia , 263 So.3d 795, 797, 2019 WL 211520 (Fla. 4th DCA Jan. 16, 2019) (quoting Zinovoy v. Zinovoy , 50 So.3d 763, 764-65 (Fla. 2d DCA 2010) ); see also § 61.30(8), Fla. Stat. Here, there was no "logically established rationale" contained in the amended final judgment for the disparate treatment. On remand, the court shall allocate the children's uncovered medical expenses in the same percentage as the parties' respective child support obligation, as recalculated after redetermining Former Husband's income, or provide a "logically established rationale" for doing otherwise.
EQUITABLE DISTRIBUTION -
(a) FIFTH THIRD BANK ACCOUNT - Former Husband argues that the trial court abused its discretion when it valued one of his Fifth Third Bank accounts at $ 13,000.56, which was the balance of the account on October 28, 2015, when Former Wife filed her petition.[2] Former Husband contends that the court abused its discretion when it equitably distributed this account to him in this amount when the undisputed evidence at trial showed that the account had been dissipated to a zero balance as of the trial date.
"The valuation of an asset or debt in connection with equitable distribution is generally reviewed for an abuse of discretion." Dorworth v. Dorworth, 176 So.3d 336, 338 (Fla. 5th DCA 2015) (citing Chehab v. Hamilton-Chehab , 45 So.3d 533, 535 (Fla. 5th DCA 2010) ). However, "[a]s a general proposition, it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings." Lopez v. Lopez , 135 So.3d 326, 328 (Fla. 5th DCA 2013) (quoting Roth v. Roth , 973 So.2d 580, 584 (Fla. 2d DCA 2008) ). Nevertheless, if marital misconduct results in the depletion or dissipation of a marital asset, the trial court may assign the asset to the dissipating spouse as part of that spouse's equitable distribution. Karimi v. Karimi , 867 So.2d 471, 475 (Fla. 5th DCA 2004).
Former Husband argues that the court erred in distributing this dissipated *262 marital asset to him without making an express finding that the dissipation resulted from intentional misconduct. We agree. See Weymouth v. Weymouth , 87 So.3d 30, 36 (Fla. 4th DCA 2012) ("To include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct." (citing Roth , 973 So.2d at 585 ) ). As Former Wife did not argue below that this dissipated asset should be distributed to Former Husband due to his intentional misconduct, on remand, the trial court shall not include this asset in its equitable distribution of the marital assets and liabilities.
(b) FORMER HUSBAND'S MERRILL LYNCH 401(k) ACCOUNT - Former Husband argues that the trial court erred when it valued his Merrill Lynch 401(k) account at $ 24,474.11 and distributed this account to him in that sum. Former Husband asserts that the balance of this account on the October 28, 2015 date the court elected to use to value marital assets was $ 9005.90, and it is this amount that should have been distributed to him. We again agree.
The valuation of an asset or debt in connection with equitable distribution that is "not supported by competent substantial evidence cannot stand." Dorworth , 176 So.3d at 338 (quoting Noone v. Noone , 727 So.2d 972, 974 (Fla. 5th DCA 1998) ). Here, a composite exhibit admitted into evidence clearly shows that this 401(k) account had a value of $ 9005.90 on October 28, 2015.[3] Because the trial court's valuation of this Merrill Lynch 401(k) was not supported by competent substantial evidence, resulting in its distribution being an abuse of discretion, on remand, the trial court is directed to use the $ 9005.90 value for this account and adjust the equitable distribution accordingly.
(c) MARITAL HOME - The trial court distributed the marital home to Former Wife based upon the parties' agreement. The court valued the home as of October 28, 2015, the date Former Wife filed her petition, to be $ 275,000, subject to a mortgage balance of $ 221,760, making the parties' shared equity in the home $ 53,240.[4] Former Wife has resided in the home since the parties separated and, by the time of trial, as found by the court, she had subsequently incurred and paid $ 36,782.02 in mortgage, tax, and insurance expenses on the home, for which she claimed deductions (for mortgage interest and taxes) on her tax returns that were received into evidence. Former Wife also presented evidence that just prior to trial, the fair market value of the house had appreciated to $ 285,000.
The trial court awarded a credit to Former Wife of $ 36,782.02 for the aforesaid payments, which it then reduced by the sum of $ 21,000 for what it determined to be a reasonable value for the rental of the home ($ 1000 per month, multiplied by twenty-one months from date of the parties' separation to trial), resulting in the sum of $ 15,782.02. The court then assessed one-half of this figure ($ 7891.01) against the value of Former Husband's equity in the home at the time of filing ($ 26,620) and ordered Former Wife to pay Former Husband $ 18,729.99 for his one-half net equity in the marital home.
*263 On appeal, Former Husband essentially argues that the court erred in conflating these two methods for calculating his one-half equity interest in the marital home. He asserts that he is entitled to either his one-half share of the equity in the home as of the date that the court valued this asset (filing date) without any reduction resulting from Former Wife's mortgage, taxes, and insurance payments on the home post-separation or , alternatively, one-half of the equity in the home based upon the home's appreciated value at the time of trial and the reduced mortgage balance, less one-half of the net amount of credits to Former Wife for her post-separation mortgage, taxes, and insurance payments (reduced by the reasonable rental value of the home as determined by the court). Former Husband contends that the present ruling effectively results in him reimbursing Former Wife for one-half of her mortgage, taxes, and insurance payments on the home while she reaps 100% of the benefits from the appreciation in the value of the home and the reduced mortgage loan balance, plus any tax benefits from claiming the entire deductions for mortgage interest and taxes on her personal income tax returns.
Former Husband is correct. On remand, because the trial court has expressly elected to use the October 28, 2015 date for valuation of marital assets, the trial court is directed to award Former Husband the $ 26,620 that it determined was his one-half equity in the marital home as of that date.[5]
ATTORNEY'S FEES -
Former Husband argues that the trial court abused its discretion in denying his request for an award of attorney's fees below. See Gunn v. Ubbels , 101 So.3d 420, 420 (Fla. 5th DCA 2012) ("The standard of review for an award or denial of attorney's fees in a dissolution of marriage proceeding is abuse of discretion." (citing Canakaris v. Canakaris , 382 So.2d 1197, 1203 (Fla. 1980) ) ). Because we have reversed the trial court's determination as to Former Husband's income as well as to its equitable distribution of certain marital assets, we also reverse the denial of Former Husband's claim for attorney's fees and remand with directions that the trial court reconsider this claim after recalculating Former Husband's income and correcting its equitable distribution of the marital property.
Former Husband has also filed a motion for an award of attorney's fees on appeal. We provisionally grant his motion and remand this matter to the trial court. If Former Husband establishes his entitlement pursuant to section 61.16, Florida Statutes, the trial court is authorized to award Former Husband all or a portion of the reasonable appellate attorney's fees. The merit of the respective positions of the parties in this appeal is not a factor that the trial court need consider. See Rados v. Rados , 791 So.2d 1130, 1134 (Fla. 2d DCA 2001).
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this opinion. FORMER HUSBAND'S MOTION FOR APPELLATE ATTORNEY'S FEES CONDITIONALLY GRANTED.
WALLIS and GROSSHANS, JJ., concur.

The parties married on December 21, 2012, and separated on September 1, 2015, and Former Wife filed her petition for dissolution of marriage on October 28, 2015.

Former Husband does not challenge the October 28, 2015 date used by the court to value the marital assets. See § 61.075(7), Fla. Stat. (2017).

The $ 24,474.11 figure used by the trial court appears to reflect the combined value of an American Funds IRA ($ 19,709.55) and a Hartford Smart 529 college savings account ($ 4764.56). The separate distribution of these accounts has not been challenged.

Former Husband takes no issue with these factual findings.

Former Husband raises two other grounds in his initial brief for reversal regarding the trial court's distribution of the American Funds IRA and denial of his request to claim both children as a dependency tax exemption on his federal income tax return for at least one year. We affirm as to these arguments without further discussion.