# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-3761
Lower Tribunal No. 22-DR-002398

_____

JACOB I. STOUTENBURGH,

Appellant,

v.

MAREIKE M. S. STOUTENBURGH,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
Lisa S. Porter, Judge.

April 2, 2026

PER CURIAM.

This appeal arises from a dissolution of marriage proceeding with several issues raised but only one of which has merit. The trial court ordered Appellant to pay $10,302.50 to Appellee for half of her attorney's fees. Her attorney's billing statements, however, included a $2,400 charge for a second day of trial.

Appellant correctly argues that the trial court erred by awarding attorney's fees for a two-day trial because it is undisputed there was only a one-day trial. But we reject Appellant's other arguments on appeal without further discussion.

Therefore, we reverse the attorney's fees award and remand for the trial court to enter a corrected final judgment ordering Appellant to pay $9,102.50 to Appellee for half of her attorney's fees. We affirm the final judgment in all other respects.

AFFIRMED in part; REVERSED in part; REMANDED with instructions.

NARDELLA and SMITH, JJ., concur.
WHITE, J., concurs, with opinion.

---

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

---

WHITE, J., concurring.

I join the majority opinion in full. I write to address Appellant's meritless claim that the trial court made an improper allocation in its equitable distribution.

**Background**

Appellant, Jacob Stoutenburgh ("Former Husband"), filed his petition of dissolution of marriage against Appellee, Mareike Stoutenburgh ("Former Wife"). The trial court then issued its Standing Temporary Order for Dissolution of Marriage (the "Standing Order"). The Standing Order, in pertinent part, stated:

> Neither party may conceal, damage or dispose of any asset, whether marital or nonmarital, and neither party may dissipate the value of an asset, for example by adding a mortgage to real estate or by failing to take care of any asset. The parties may spend their incomes in the ordinary course of their personal and family affairs. Neither party may conceal, hoard or waste jointly own funds, whether in the form of cash, bank accounts or other liquid assets, except funds may be spent for the necessities of life. The use of funds or income after separation must be

2

accounted for and justified as reasonable and necessary for the necessities of the party or to preserve marital assets or pay marital debt. Both parties are accountable for all money or property in their possession during the marriage and after separation.

The Standing Order remained in effect during the entirety of the case.

Among the contested issues in the proceeding was the equitable distribution of the marital estate. At trial, Former Husband testified that during the pendency of the case he sold certain marital assets: a boat for $30,000; and two motorcycles for $6,000 in total.[1] However, he admitted that neither the trial court nor Former Wife gave him permission to sell the Assets Sold. Former Husband did not deposit the sales proceeds in the account the parties used to pay their marital expenses. Instead, he deposited those funds in his business account. Former Husband claimed he used the sales proceeds on various marital expenses but did not provide corroborating documentation accounting for the use of those funds. Furthermore, other evidence showed he used his business account to pay for a multitude of unreasonable or unnecessary personal expenses.

The trial court entered a thorough, well-reasoned final judgment. It commenced with a declaration:

The Court listened to the testimony presented. The Court had the opportunity to evaluate and weigh all of the testimony, based on the

---

[1] The boat is described in the equitable distribution worksheet as the "2011 Sailfish with Trailer." The two motorcycles are described in the equitable distribution worksheet as "Yamaha X2." This opinion will refer to them collectively as the "Assets Sold."

Court's consideration of the intelligence, frankness, credibility, plausibility, character and competence of the witnesses, cognizant of the interest of the parties in the outcome of the case. The Court considered the reasonableness of the testimony of the witnesses considering all the evidence. Giv[ing] the evidence and testimony the weight it deserves, the Court has determined the facts and the law as best as it can. The Court listened carefully to ascertain motives, biases, interests, and to penetrate through the surface of remarks to their real purposes and motives.

Among other things, the trial court found that Former Husband failed to comply with the Standing Order when he disposed of the Assets Sold. The trial court did not accept Former Husband's explanation that he used the sales proceeds for marital expenses. In fact, the trial court determined that Former Husband used his business account to pay for personal expenses for him, his girlfriend, or both, including a $2,900 handbag, expensive dinners, vacations, "staycations," expensive jewelry, liposuction surgery, and expensive clothing. In its equitable distribution, the trial court allocated to Former Husband the $36,000 sales proceeds from the Assets Sold.

**Analysis**

Former Husband has the gall to argue that there was no competent, substantial evidence of misconduct to justify the trial court's allocation of the proceeds from the Assets Sold. *Au contraire*, his violation of the Standing Order is, by definition, misconduct. *See Misconduct*, *Black's Law Dictionary* (12th ed. 2024) ("A dereliction of duty; unlawful, dishonest, or improper behavior."). His prodigal

4

spending on himself and his girlfriend is misconduct too. *See Lopez v. Lopez*, 135 So. 3d 326, 329 (Fla. 5th DCA 2013) ("Here, the trial court found misconduct because Former Husband spent a portion of his monthly income on his girlfriend—which it reasoned would normally be available to pay for property taxes and home improvements."). Former Husband's argument about a lack of competent, substantial evidence of misconduct is belied by a record replete with evidence supporting the trial court's ruling. *See Lopez*, 135 So. 3d at 328 ("[I]f marital misconduct results in the depletion or dissipation of a marital asset, a trial court may make an unequal distribution of marital property, or may assign the asset to the dissipating spouse as part of that spouse's equitable distribution." (quoting *Karimi v. Karimi*, 867 So. 2d 471, 475 (Fla. 5th DCA 2004))).

Furthermore, his contention rests upon faulty premises. First, Former Husband believes that Former Wife bore the burden to prove misconduct. Not so. Under the Standing Order, the burden was on him to prove that the use of the proceeds from the Assets Sold was "reasonable and necessary for the necessities of the party or to preserve marital assets or pay marital debt."

Former Husband also asserts that the trial court could not find misconduct because he testified he used the sales proceeds for marital expenses. Wrong again.

> When a defendant testifies on his version of events, the jury is "free to reject [his] version of events as unreasonable," *Finney v. State*, 660 So. 2d 674, 680 (Fla. 1995), and in turn may view this testimony as "evidence of a guilty mind." *Jackson v. State*, 347 So. 3d 292, 307 (Fla.

5

2022); *see also United States v. Allison*, 908 F.2d 1531, 1535 (11th Cir. 1990) ("The jury may view defendant's false explanatory statement as substantive evidence proving guilt.").

*Figueroa-Sanabria v. State*, 366 So. 3d 1035, 1051 (Fla. 2023).

> For the demeanor of a witness "may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies."

*NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408 (1962) (quoting *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) (L. Hand, J.)); *see also Wright v. West*, 505 U.S. 277, 296 (1992) (opinion of Thomas, J., joined by Rehnquist, C.J. & Scalia, J.) ("[T]he jury was entitled . . . to take into account West's demeanor when testifying, which neither the Court of Appeals nor we may review. And if the jury did disbelieve West, it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt[.]" (first citing *Wilson v. United States*, 162 U.S. 613, 620–21 (1896); then citing *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir. 1991), *aff'd on other grounds*, 506 U.S. 534 (1993); and then citing *Dyer*, 201 F.2d at 269)).

The trial court's disbelief of Former Husband's self-serving story allowed it to conclude that he did not meet his burden under the Standing Order and did engage in misconduct. It bears repeating that,

[a]s in all cases such as this, the trial court was required to determine the credibility of the witnesses. It did so and found the facts adverse to [Appellant]. It is not the role of this Court to second-guess that decision.

*Pipher v. Pipher*, 364 So. 3d 1134, 1134 (Fla. 6th DCA 2023); *see also Lahodik v. Lahodik*, 969 So. 2d 533, 535 (Fla. 1st DCA 2007) ("Similarly, the appellate court does not assess whether it is possible to recite contradictory record evidence which supports arguments rejected below, nor does it retry the case or substitute its judgment for the trial court's on factual matters supported by competent, substantial evidence.").

## Conclusion

For all the foregoing reasons, the trial court did not err by allocating the sales proceeds from the Assets Sold to Former Husband.

———————————————

Matthew P. Irwin, of Men's Rights Law Firm, Cape Coral, for Appellant.

No Appearance for Appellee.